# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS CURTIS HISLE,<br><br>        Plaintiff,<br><br>   v.<br><br>MARLYN CONANAN, et al.,<br><br>        Defendants. | Case No. 1:17-cv-01400-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT CONANAN'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 68] |

Plaintiff Dennis Curtis Hisle is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Dr. Conanan's motion for summary judgment, filed June 17, 2019.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Marlyn Conanan and John Doe (at Mercy Hospital) for deliberate indifference to a serious medical need.[1]

///

---

[1] On June 18, 2019, the undersigned issued Findings and Recommendations recommending that Plaintiff's motion to amend the complaint to identify the "Doe" Defendant as Dr. Mushtaq Ahmed be granted. (ECF No. 72.)

1

On April 10, 2018, Defendant Conanan filed an answer to the complaint. On April 11, 2018, the Court issued the discovery and scheduling order.

As previously stated, on June 17, 2019, Defendant Conanan filed a motion for summary judgment. Plaintiff filed an opposition on August 20, 2019, and Defendant filed a reply on August 27, 2019, along with objections. (ECF Nos. 84, 85, 86.)

On September 16, 2019, Plaintiff filed a response to Defendant's objections, a surreply to Defendant's reply, and a request for an extension of time to conduct further discovery. (ECF Nos. 88, 89, 90.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.
## DISCUSSION

### A. Summary of Plaintiff's Complaint

Plaintiff repeatedly informed Dr. Conanan that he was suffering excruciating pain and could not breathe. Dr. Conanan performed an x-ray and discovered that Plaintiff had three broken ribs and internal bleeding that was not previously detected by staff at Community Regional Medical Center (CRMC). Despite the x-ray results, Plaintiff was ordered to return to his cell. However, two to three days later, Plaintiff was rushed to the hospital.

On or about May 21, 2016, Plaintiff was taken by ambulance to Mercy Hospital in Bakersfield for treatment of three broken ribs, internal bleed, and removal of a developing extra pleural hematoma. Dr. John Doe kept Plaintiff chained to a bed with continuous internal bleeding, strained breathing and in great pain for two weeks because there was no bed space to be transferred to Memorial Hospital. When Plaintiff eventually arrived at Memorial Hospital, a surgical procedure was attempted by use of a large needle to extract the blood which if it had been done sooner would have worked. However, due to the length of delay in treatment removal required a much more serious surgical procedure. Dr. John Doe would visit Plaintiff's room and state "he doesn't know what to do with me, and he actually suggest[ed] sending me back to (CDCR) PVSP because of the wait."

### B. Statement of Undisputed Facts

1. Plaintiff was an inmate at Pleasant Valley State Prison. On October 17, 2017, Plaintiff filed the first amended complaint and alleged that Dr. Marylyn Conanan was deliberately indifferent to Plaintiff's rib fractures. (Pl.'s First Amd. Compl. (FAC).)

2. Plaintiff has no medical degrees and is not a medical expert. (Pl.'s Dep. 11:11-19; 56:11-14; 85:10-13.)

3. Plaintiff had to be taken to Community Regional Medical Center (CRMC) due to being assaulted in the dayroom on April 28, 2016. (Pl.'s Dep. 28:1-2; Conanan Decl. ¶ 3 Ex. A; Feinberg Decl. ¶ 8 Ex. B.)

4. While at CRMC, Plaintiff had a CT scan of his chest and abdominal area and was

determined to be clinically stable. (Pl.'s Dep. 28:15-21; Conanan Decl. ¶ 3 Ex. A; Feinberg Decl. ¶ 9 Ex. B.)

5. The testing conducted on Plaintiff at CRMC did not detect any broken ribs. (Pl.'s Dep. 30:19-23; Conanan Decl. ¶ 3 Ex. A.)

6. No one at CRMC had diagnosed Plaintiff with broken ribs. (Pl.'s Dep. 30-31; Conanan Decl. ¶ 3 Ex. A.)

7. Plaintiff received a lay-in where he was confined to quarters for four days after his return from CRMC on or about April 29, 2016. (Pl.'s Dep. 36:25; 37:1-2.)

8. Plaintiff met with Defendant Conanan on May 2, 2016 so that she could review his treatment at CRMC. Dr. Conanan told Plaintiff that his testing at CRMC indicated normal results. Plaintiff complained of pain in his right chest area below his rib cage. For this reason, Dr. Conanan requested that Plaintiff receive a chest x-ray. (Pl.'s Dep. 42-46; Conanan Decl. ¶ 4; Feinberg Decl. ¶ 10 Ex. B.)

9. On May 4, 2016, Plaintiff received a chest x-ray, which was interpreted by Dr. C. Schultz, M.D. to show rib fractures at the seventh, eighth, and ninth posterior ribs. There was also no visible pneumothorax or collapsed lung, and there was a small, right pleural effusion or hemothorax present. These images were new and not visualized on the CT scan taken of Plaintiff at CRMC. (Pl.'s Dep. 48:15-25; 49:1-5; Conanan Decl. ¶ 5 Ex. C; Feinberg Decl. ¶ 11.)

10. On May 5, 2016, Dr. Conanan had a follow-up appointment with Plaintiff to review the results of his May 4, 2016 x-ray. Dr. Conanan prescribed critical pain medications, and activity modifications, and scheduled Plaintiff for a follow-up appointment on May 12, 2016 to check the status of Plaintiff's rib fractures. (Pl.'s Dep. 52:8-25; 54, 55; 61-62; Conanan Decl. ¶ 6 Ex. D; Pl's Dep. 48:7-10; Pl.'s Dep. Ex. 5; Feinberg Decl. ¶ 12.)

11. Dr. Conanan believed that Plaintiff's injuries could be treated with regular monitoring, activity modification, rest, and pain management with pain medications. Dr. Conanan did not believe Plaintiff required urgent hospitalization. Further, attempting to drain a small effusion can likely cause further complications, such as a pneumothorax. (Conanan Decl. ¶ 11; Feinberg Decl. ¶ 27.)

12. On May 9, 2016, Plaintiff refused to take Tylenol #3 against medical advice and signed

a "refusal of examination or treatment" from stating that he had refused the medications after being advised of the risks associated with refusing to take the medications. (Pl.'s Dep. 66:10-20; 67:18-25; 68:7-25; 69; Conanan Decl. ¶ 7 Ex. E; Feinberg Decl. ¶ 13.)

13. On May 12, 2016, Plaintiff saw Dr. Conanan again. Plaintiff again complained of pain to his lower right chest area and had pain when he breathed deeply. Dr. Conanan ordered another x-ray of Plaintiff and told Plaintiff to take his prescribed pain medications. Dr. Conanan scheduled another follow-up appointment with Plaintiff for May 19, 2016. (Pl.'s Dep. 61:2-25; 62:11-22; 63:8-18; 65:17-25; 66:1-9; Conanan Decl. ¶ 8 Ex. F; Feinberg Decl. ¶ 14.)

14. Given Plaintiff's new occasional cough, mucus and slight wheezing demonstrated at Plaintiff's May 12, 2016 appointment with Dr. Conanan, Dr. Conanan prescribed antibiotics for a possible upper respiratory infection, renewed Plaintiff's pain medications, and requested a repeat chest x-ray. (Pl.'s Dep. 59:9-13; Conanan Decl. ¶ 8 Ex. F; Feinberg Decl. ¶ 14 Ex. B.)

15. On May 16, 2016, Plaintiff had another x-ray. Dr. Schultz interpreted that x-ray and visualized a large opacity that appeared over Plaintiff's right lung. This finding was new and had not appeared on any previous x-ray. (Conanan Decl. ¶ 9 Ex. G; Feinberg Decl. ¶ 16.)

16. Technician Richard operated the x-ray imaging equipment for Plaintiff on May 16, 2016. He made no diagnosis or interpretation of this x-ray and did not recommend to Dr. Conanan or any doctor that Plaintiff needed urgent hospitalization. Technician Richard does not have the training, knowledge, or experience to interpret x-ray film and diagnose medical conditions. (Richard Decl. ¶ 2.)

17. On May 19, 2016, Dr. Conanan had a follow-up appointment with Plaintiff to discuss the findings from Plaintiff's May 16, 2016 x-ray. Dr. Conanan's medical process notes indicates that she decided, based on the fact that there was an opacity visualized on the May 16, 2016 x-ray, to make an urgent request for Plaintiff to see a pulmonologist. (Pl.'s Dep. 80:18-23; Conanan Decl. ¶ 10 Ex. H.)

18. Inmate Hisle was transferred to an outside hospital on May 20, 2016. (Conanan Decl. ¶ 10; Feinberg Decl. ¶ 17.)

///

19.     Plaintiff saw Dr. George at the TTA on May 20, 2016, and Plaintiff was transferred by car to Mercy Hospital in order to rule out pneumonia. (Feinberg Decl. ¶ 17.)

20.     Plaintiff was hospitalized at Mercy Hospital in Bakersfield, California from May 20, 2016 until May 31, 2016. A large right sided pleural hematoma was found on the imaging studies and a CT guided aspiration was performed by interventional radiologist Dr. David Condie. (Feinberg Decl. ¶ 18.)

21.     Dr. Mustaq Ahmed, the hospitalist overseeing Plaintiff's medical care at Mercy Hospital, elected to pursue surgical evacuation of the hematoma, and the surgery required Plaintiff to be transferred to Memorial Hospital in Bakersfield. (Feinberg Decl. ¶ 18.)

22.     Plaintiff stayed at Memorial Hospital from May 31, 2016 until June 7, 2016. (Feinberg Decl. ¶ 19.)

23.     Thoracic surgeon Dr. Peck consulted with Plaintiff on June 1, 2016, and recommended a surgical evacuation of the hematoma and discussed with Plaintiff the benefits and alternatives to Plaintiff who agreed to proceed with the surgery. (Feinberg Decl. ¶ 19.)

24.     On June 3, 2016, Dr. Peck performed a right thoracotomy and evacuation of the extrapleural hematoma. There were no complications with the surgery, and Plaintiff was discharged on June 7, 2016. (Feinberg Decl. ¶ 20.)

25.     Plaintiff saw Dr. De La Sierra on June 8, 2016 at Pleasant Valley for follow-up. H stayed in the Correctional Treatment Center for the remainder of the month where Dr. De La Sierra saw him every other day and noted his continued good recovery from the surgery. (Feinberg Decl. ¶ 21.)

26.     Plaintiff believes he experiences asthma; however Plaintiff's asthma is not secondary to surgery. (Pl.'s Dep. 111:1-25; Feinberg Decl. ¶ 28.)

**C.    Plaintiff's Filing of Surreply**

On September 16, 2019, Plaintiff filed a request to file a surreply.

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired. Local Rule 230(*l*). The Court generally views motions for leave to file a surreply with disfavor. Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D.

6

Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). Although Plaintiff does not have a right to file a surreply, in this instance the Court will exercise its discretion and consider the surreply as Plaintiff addresses an issue raised by Defendant in her reply.

### D. Request To File Supplemental Summary Judgment Evidence

Plaintiff contends that he did not anticipate Defendant objecting to the medical evidence and terminology. Plaintiff requests pursuant to Federal Rule of Civil Procedure 56(e) that he be allowed time to get signed affidavits from various individuals to provide legally sufficient definitions and meaning to the medical terms as presented in his records. (Mot. at 2, ECF No. 90.)

Federal Rule of Civil Procedure 56(e) provides:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Here, Plaintiff simply disagrees with Defendant's objections to his evidence relating to his medical records. However, as explained below, Plaintiff cannot provide medical testimony, based on

any source, outside of his own personal knowledge and experience related to his medical condition.[2] To the extent, Plaintiff is attempting to seek relief by way of further discovery under Federal Rule of Civil Procedure 56(d), he cannot do so. Rule 56(d) allows the Court to defer consideration of a motion where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot represent facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In order to obtain relief under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008). Here, Plaintiff does not set forth what specific facts he hopes to elicit through further discovery or explain how "the sought-after facts are essential to oppose summary judgment." Id. Plaintiff contends only that if the Court does not rely on the medical terms as defined by the sources set forth in his opposition, he wishes to secure affidavits from various individuals. This is insufficient to obtain relief under Rule 56(d). Further, Plaintiff's attempt to submit additional definitions and evidence of medical terms is an attempt to act as a medical expert regarding his medical treatment and/or condition. Accordingly, Plaintiff's motion to supplemental the evidence (ECF No. 89) is denied. For the same reasons, Plaintiff's motion for an extension of time to conduct discovery (ECF No. 90) is denied.

**E.     Defendant's Objections to Plaintiff's Opposition**

Defendant objects to several portions of Plaintiff's memorandum opposition, response to the statement of undisputed facts, and Plaintiff's separate statement of disputed material facts. (ECF No. 86.) "[I]n motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." Doe v. Starbucks, Inc., No. SACV 08-cv-0582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). "This is especially true when many of the "objections are boilerplate recitations of evidentiary principles or blanket objections" with limited or no analysis to the specific

---

[2] A lay witness "opinion is limited to one that is: a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

8

items of evidence. Id.; see also Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F.Supp.2d 1023, 1033 (C.D. Cal. 2013) (stating "[t]he Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact").

The Court need not and will not address each of Defendant's objections individually and will only address the relevant objections if necessary to the resolution of the motion. However, the Court will address a couple evidentiary issues. First, the Court cannot consider as evidence Plaintiff's attempts to interpret his medical records, criteria, and statements regarding what he believes the appropriate treatment should have been. See Fed. R. Evid. 702. It is undisputed that Plaintiff has no medical training or education. (Pl.'s Dep. 11:11-19; 56:11-14; 85:10-13.) Therefore, to the extent Plaintiff expresses opinions not based on his first-hand knowledge of the facts of this case, but instead applies to specialized knowledge to which a lay person does not possess, the Court will not consider such testimony. United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002). To the extent the Court does not explicitly address an objection, that objection is overruled as moot because the Court did not rely upon the particular underlying evidence in deciding the instant motion for summary judgment.

Defendant further requests that the Court strike Plaintiff's factual statements under the sham affidavit rule. Defendant specifically contends that: (1) Plaintiff contradicted his earlier testimony concerning the dates and times of his appointments with her; (2) Plaintiff contradicted his earlier deposition testimony by asserting that she did not request to have him see a pulmonologist, despite his earlier deposition testimony wherein he stated he had no personal knowledge of who ordered him to see a pulmonologist; and (3) Plaintiff contends in his opposition that he was forced to continue working as a porter because of the denial of a lay-in order, despite the fact that he testified at his deposition that he was not working that frequently during the time frame of his injuries. (Reply at 4-5, ECF No. 85.)

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009) (internal quotation omitted). This rule "should be applied with caution." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009) (internal quotation omitted). The same affidavit rule "does not apply to every instance when a later affidavit contradicts deposition

testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 267 (9th Cir. 1991). Before applying the sham affidavit rule, "the district court must make a factual determination that the contradiction was actually a 'sham.'" Id. "[T]he inconsistency between a party's deposition testimony and affidavit must be clear and unambiguous to justify striking the affidavit." Van Asdale, 577 F.3d at 989-99. The Court explained that "minor conflicts between [a declarant's] earlier deposition testimony and subsequent declaration … do not justify invocation of the sham affidavit rule." Id. at 999.

Given Plaintiff's pro se status and the inconsistencies pointed out by Defendant, the Court finds that the inconsistencies are not sufficiently "clear and unambiguous" to justify striking Plaintiff's declaration or any portion of it. Therefore, the Court will follow the Ninth Circuit's guidance with respect to the individual facts the Court relies on here.

**D. Analysis of Defendant Conanan's Motion**

1. Eighth Amendment Claim

Defendant Dr. Conanan argues that there is no dispute of material fact to conclude that she intentionally disregarded a known risk to Plaintiff's serious medical need.

**a. Amendment and/or Supplemental Complaint**

Before proceeding to the merits of the Plaintiff's claims, the Court must address the scope of the claims presented to be analyzed in resolving the instant motion for summary judgment.

Defendant argues that Plaintiff failed to plead the lack of lay-in order in the operative complaint and such claim cannot be raised now by way of opposition to the instant motion for summary judgment. However, as Plaintiff points out in his surreply, Plaintiff elaborated on his claim at his deposition by testifying that although Dr. Conanan's medical notes reflected that a lay-in was ordered, no such lay-in was provided to Plaintiff. (Pl.'s Opp'n at 55.) Plaintiff argues that Dr. Conanan intentionally falsified her notes to reflect a lay-in to show that she did not act with deliberate indifference, and Plaintiff realized the falsity when the motion for summary judgment was filed along with the medical notes and declaration.

"[W]hen issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, [t]he district court should [] construe[] [the matter raised] as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time." Desertrain

v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014) (citation omitted); Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994), overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. V. Align Tech. Inc., 856 F.3d 605 (9th Cir. 2017). A plaintiff need not tender a formal amendment. Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1445 n. 2 (9th Cir. 1990). Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). As with other amendments, the factors to consider include whether there is bad faith by the plaintiff, undue delay, prejudice to the defendants, futility in amendment, and the number of prior opportunities to amend. Desertrain v. City of Los Angeles, 754 F.3d at 1154-55.

In the interest of justice, the Court will permit amendment of the complaint to include Plaintiff's claim that Dr. Conanan failed to provide him a lay-in order on May 5, 2016, as reflected in her medical progress notes. The facts to consider in determining whether to permit the amendment of the complaint weigh in favor of allowing the amendment. There does not appear to be bad faith or undue delay as Plaintiff gave notice of the claim at his deposition and contends it is in response to Dr. Conanan's medical progress notes and declaration. Plaintiff has only amended the complaint once. Further, and most importantly, there does not appear to be any prejudice to Defendant given that she was on notice of the claim at Plaintiff's deposition and addressed it in her reply. Moreover, amendment would not be futile, as the evidence (discussed below) show a triable issue as to whether Dr. Conanan was deliberately indifferent by failing to provide a lay-in as reflected in her medical progress notes.

### b. Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1113; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the

need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989), overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

As an initial matter, Defendant does not dispute or argue that Plaintiff's rib fractures constituted an objectively serious medical need.

The undisputed facts demonstrate Plaintiff was taken to Community Regional Medical Center (CRMC) due to being assaulted in the dayroom on April 28, 2016. (Pl.'s Dep. 28:1-2; Conanan Decl. ¶ 3 Ex. A; Feinberg Decl. ¶ 8 Ex. B.) While at CRMC, Plaintiff had a CT scan of his chest and abdominal area and was determined to be clinically stable. (Pl.'s Dep. 28:15-21; Conanan Decl. ¶ 3 Ex. A; Feinberg Decl. ¶ 9 Ex. B.) The testing conducted on Plaintiff at CRMC did not detect any broken ribs. (Pl.'s Dep. 30:19-23; Conanan Decl. ¶ 3 Ex. A.) No one at CRMC had diagnosed Plaintiff with broken ribs. (Pl.'s Dep. 30-31; Conanan Decl. ¶ 3 Ex. A.) Plaintiff received a lay-in where he was confined to quarters for four days after his return from CRMC on or about April 29, 2016. (Pl.'s Dep. 36:25; 37:1-2.)

Plaintiff met with Defendant Conanan on May 2, 2016 so that she could review his treatment at CRMC. Dr. Conanan told Plaintiff that his testing at CRMC indicated normal results. Plaintiff complained of pain in his right chest area below his rib cage. For this reason, Dr. Conanan requested that Plaintiff receive a chest x-ray. (Pl.'s Dep. 42-46; Conanan Decl. ¶ 4; Feinberg Decl. ¶ 10, Ex. B.)

///

On May 4, 2016, Plaintiff received a chest x-ray, which was interpreted by Dr. C. Schultz, M.D. to show rib fractures at the seventh, eighth, and ninth posterior ribs. There was also no visible pneumothorax or collapsed lung, and there was a small, right pleural effusion or hemothorax present. These images were new and not visualized on the CT scan taken of Plaintiff at CRMC. (Pl.'s Dep. 48:15-25; 49:1-5; Conanan Decl. ¶ 5, Ex. C; Feinberg Decl. ¶ 11.)

Defendant submits the declaration of expert witness, Dr. B. Feinberg who opines that Dr. Conanan was not deliberate deliberately indifferent to Plaintiff's complaints of chest pain at any time. (Feinberg Decl. ¶¶ 27-28.)

In his opposition, Plaintiff initially argues that Dr. Feinberg is biased because he is employed by CDCR. Plaintiff also argues that Dr. Conanan failed to provide him a lay-in order (after discovery of his three broken ribs), altered the progress note to reflect that a lay-in order was issued, and later noted that Plaintiff was able to work on the yard. Plaintiff further argues that Dr. Conanan falsely reported the x-ray exam results and failed to recognize that he suffered a collapsed lung and internal bleeding. In addition, Plaintiff disputes whether Dr. Conanan provided an urgent request for Plaintiff to be seen by a pulmonologist.

Plaintiff's objection to the testimony of Dr. Feinberg lacks support because he is qualified to offer an expert opinion on Plaintiff's medical treatment. Dr. Feinberg graduated from the University of California at San Francisco School of Medicine in 1994. He completed an internship and residency in Internal Medicine at the Baylor College of Medicine in Houston, Texas in 1997. He is Board Certified in Internal Medicine and has been licensed to practice medicine in California since 1997. He is currently employed by the California Correctional Health Care Services (CCHCS) and serves as the Chief Medical Consultant for the CCHCS Office of Legal Affairs. Accordingly, Plaintiff's objection is overruled.

With regard to the May 5, 2016 evaluation, Dr. Conanan declares the following:

> I saw [Plaintiff] on May 5, 2016, the day after he sat for his x-ray. A true and correct copy of my progress notes from May 5, 2016 is attached as Exhibit D. [Plaintiff] appeared to be alert and oriented, ambulatory, and did not appear to be in acute pain. [Plaintiff] complained of rib pain and stated that he was unable to do deep breathing exercises. At that time, I discussed with [Plaintiff] the results of the May 4, 2016 x-ray and showed him his rib fractures. I provided [Plaintiff] with educational material regarding rib fractures and instructed him to

13

modify his activities. In particular, I told [Plaintiff] not to pull, push, or lift weight greater than ten pounds. I also prescribed Tylenol #3 and 800 milligrams of Ibuprofen three times a day for his pain. Tylenol #3 has codeine in it and is therefore much more effective in treating pain. Pain management is an important part of treating rib fractures, and it is standard practice to prescribe medications such as Tylenol #3. My purpose in making this prescription was to allow [Plaintiff] to manage his pain so that he could do deep breathing exercises and avoid fluid building up in his lungs. I also scheduled [Plaintiff] for a follow-up appointment one week from May 5, 2016 to check on the status of his rib fractures. It is standard practice to provide patients who are suffering from a rib fracture pain medication for pain management. In addition, I decided to schedule repeat follow-up to monitor [Plaintiff's] progress.

(Conanan Decl. ¶ 6.)

With regard to the May 19, 2016 evaluation, Dr. Conanan declares the following:

I had my seven-day follow up appointment with [Plaintiff] on May 19, 2016. I wanted to discuss with him the results of the May 16, 2016 x-ray. As in his last four appointments with me, [Plaintiff] made the same complaints of pain: he had pain in his right sub coastal area. Again, he was not wheezing, he did not have rales, and his right subcoastal area was tender to the touch. [Plaintiff] was also alert, oriented, and ambulatory. [Plaintiff] was able to explain to me his symptoms in full sentences without difficulty. Based on [Plaintiff's] May 16, 2016 chest x-ray, a large opacity—or opaque—area had developed, which may have represented pleural fluid collection or an extra pleural hematoma. He did not have a pneumothorax or collapsed lung at that time. I decided at that time to refer [Plaintiff] to a pulmonologist and to have a repeat x-ray on the following day. The opacity was a new finding, and for that reason, I made an urgent request for service in order for [Plaintiff] to see a pulmonologist.

(Conanan Decl. ¶ 10, Ex. H.)

The Court notes that it may not weigh the evidence or assess the credibility of witnesses; it may determine only whether there is a genuine issue for trial and in doing so, it must draw all inferences in the light most favorable to Plaintiff, who is the nonmoving party. <u>Soremekun v. Thrifty Payless Inc.</u>, 509 F.3d at 984.

With regard to the order for a lay-in,[3] beyond the mere notation on the medical progress notes, there is no further evidence to support that Dr. Conanan ordered and Plaintiff was provided a lay-in for modified activity on May 5, 2016. If the lay-in was not provided as claimed by Plaintiff, there is a question of fact as to whether such failure amounted to deliberate indifference. Although Dr. Conanan

---

[3] A medical "lay-in" is a doctor's order which, among other things, may excuse an inmate from work. <u>See</u> Cal. Code Regs. tit. 15, § 3043.5(d)(B)(2).

14

declares she advised him not to pull, push, or lift weight greater than ten pounds, there is an issue of fact as to whether a lay-in order was provided to prevent him from doing so.

Defendant argues that Plaintiff's deposition testimony contradicts his claim that he was required to "continue at his job assignment, cleaning showers, mopping floors, climbing up 2nd floor stairs to broom the tier, filling and moving heavy mop buckets, and walking to the chow hall to retrieve heavy food cars and roll them up to the building to feed other inmates." (Pl.'s Opp'n at 101-102, ECF No. 84.) Defendant relies on the follow colloquy from his deposition:

[Defense Counsel]: Were you working—did you lose any wages as a result of this?

[Plaintiff]: Of course not.

[Defense Counsel]: You were not? You did not lose any wages?
[Plaintiff]: The—if you want to consider the pennies we make as wages, well yeah, there's that but—

[Defense Counsel]: How much did you lose as a result of that?

[Plaintiff]: Well, Let's see. I don't know. I make twelve cents as a porter. You do the math?

[Defense Counsel]: How many hours did you work as a porter?

[Plaintiff]: You really want me to try and calculate this? Geeze. Ok, 12 cents an hour. Let me see. I was laid in for a period of, what, four days? And then there was a time after that where my duties were very limited. So, you know, hell, I might've lost a whole, you know, $20 or something. I mean, that's—you know. Yeah, that month was a bad month for me.

(Pl.'s Dep. at 112:24-13; 113:1-19.)

However, Plaintiff's deposition testimony is equivocal as to the exact duties he was required to perform with regard to his activities and job assignment. Further, it is clear that at the May 5, 2016, appointment Plaintiff was suffering from three rib fractures, and Plaintiff testified that he spoke with Dr. Conanan about the possibility of pneumonia. (Pl.'s Dep. at 50-51.) Then, at the May 12, 2016, evaluation he complained of pain when deep breathing, had a cough and thick mucus, yet Dr. Conanan noted that Plaintiff was functional in the yard. (Conanan Decl. ¶ 8 Ex. F.) Any discrepancy in Plaintiff's deposition testimony goes to the weight of the evidence, which the Court cannot determine on summary judgment. See, e.g., Winding v. Allstate Ins. Co., No. 2:09-cv-03526-KJM, 2011 WL

5241274, at *8 (E.D. Cal. Nov. 1, 2011) ("Although plaintiff's deposition testimony is equivocal and might ultimately be used at trial to undermine plaintiff's credibility, none of the excerpts of his deposition testimony cited by Allstate clearly and unambiguously contradicts the later-filed declaration."). Thus, there is a genuine issue of material fact as to whether Dr. Conanan was deliberately indifferent by failing to provide a lay-in to allow Plaintiff's rib fracture to properly heal.

In addition, although Dr. Conanan's progress notes indicate that an urgent request to see a pulmonologist was made (Conanan Decl., Ex. H.), there is no further independent evidence that a "urgent" request to see a pulmonologist was submitted in a timely manner. Indeed, it is undisputed that Dr. George made an emergent request for Plaintiff to be sent to an outside hospital on May 20, 2016. (Feinberg Decl. ¶ 17, Ex. B at p. 42-46 of 94.) Dr. Conanan's progress notes merely indicate that she referred him for x-rays the following day, and Dr. Feinberg speculates that Dr. Conanan "apparently" requested Plaintiff to be rechecked in the TTA the following day. (Feinberg Decl. ¶ 16.) However, there is no independent evidence that Dr. Conanan ordered Plaintiff to be seen the following day in the TTA. Therefore, construing the evidence in the light most favorable to Plaintiff, there is a disputed issue of material fact as to whether Dr. Conanan was deliberately indifferent by failing to provide a lay-in and urgent referral as noted and reflected on her medial progress notes. Accordingly, Dr. Conanan's motion for summary judgment should be denied.

2.  Qualified Immunity

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

The right at issue must be narrowly defined in light of the specific context in the case, not at a high level of generality. White v. Pauly, 137 S.Ct. 548, 551 (2017); Mullenix v. Luna, 136 S.Ct. 305, 308-09 (2015).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

Because the Court has already determined there is a genuine issue of material fact as to whether Defendant Dr. Conanan was deliberately indifferent to Plaintiff's serious medical needs, the Court considers only the second prong of the qualified immunity test: Whether the right was clearly established at the time of the alleged violation. "The general law regarding the medical treatment of prisoners was clearly established at the time of the incident[s]." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002). Plaintiff's right to adequate medical care was clearly established in 2016 at the time of Dr. Conanan's medical treatment. Here, the record reveals that Dr. Conanan's medical progress notes reflect that a lay-in for modified activity and a referral for urgent treatment by a pulmonologist were ordered for. However, Plaintiff contends Dr. Conanan falsely reported a lay-in order was provided and failed to submit the urgent referral to see a pulmonologist, and there is no independent evidence to demonstrate otherwise. The defense of qualified immunity affords the moving party no deference regarding disputed facts. "In qualified immunity cases, [viewing the facts in favor of the non-moving party] usually means adopting . . . the plaintiff's version of the facts." Scott v. Harris, 550 U.S. 372, 378 (2007). The Court concludes that a reasonable official in Defendant Dr. Conanan's position could not believe such conduct, if found by the trier of fact to have been as Plaintiff claims, would be lawful in light of clearly established law regarding medical indifference. See Clement, 298 F.3d at 906 (finding it is clearly established that prison officials may not intentionally deny of delay

access to medical care); Kelly v. Borg, 60 F.3d 664, 666 (9th Cir. 1995).  Accordingly, Defendant Dr. Conanan is not entitled to qualified immunity.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion to file a surreply is GRANTED;
2. Plaintiff's motion to supplement the evidence (ECF No. 89) and for an extension of time to conduct discovery (ECF No. 90) are DENIED; and
3. Defendant Dr. Conanan's motion for summary judgment be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __October 30, 2019__

UNITED STATES MAGISTRATE JUDGE