# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS CURTIS HISLE,<br><br>    Plaintiff,<br><br>v.<br><br>MARYLYN CONANAN, et al.,<br><br>    Defendants. | Case No. 1:17-cv-01400-NONE-SAB-PC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT CONANAN'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BE GRANTED<br><br>(ECF No. 107) |

Plaintiff Dennis Curtis Hisle is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Dr. Conanan's motion for summary judgment for failure to exhaust the administrative remedies, filed on March 2, 2020.

## I.

## RELEVANT BACKGROUND

This action is proceeding against Defendants Dr. Marlyn Conanon ("Dr. Conanon" or "Defendant Conanon") and Dr. Mushtaq Ahmed for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

As previously stated, on March 2, 2020, Defendant Conanon filed a motion for summary judgment. (ECF No. 107). On April 20, 2020, Plaintiff filed an opposition, and Defendant Conanon filed a reply on May 1, 2020. (ECF Nos. 115, 120).

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions. 42 U.S.C. § 1997e(a); see Ross v. Blake, 136 S. Ct. 1850, 1862 (2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

## III.

## DISCUSSION

### A.   Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is

mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85–86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010).

CDCR's grievance policy outlines how an inmate must exhaust administrative remedies. (Gates Decl. ¶ 3, ECF No. 107-3). Before September 1, 2017, all inmate grievances about health care were governed by California Code of Regulations, title 15, §§ 3084–86. (Id.). Under these regulations, health care appeals were subject to three levels of administrative review before administrative remedies were deemed exhausted. (Id.). Section 3084.2 describes the process inmates must follow when preparing and submitting an inmate grievance. (Id. ¶ 4). Inmates must list all staff members involved in the action being appealed, inmates must describe each staff member's involvement in the action being appealed, and inmates must state all facts known and available to them about the issue under appeal in the inmate appeal form. (Id.).

After September 1, 2017, CCHCS implemented new regulations for health care grievances. (Gates Decl. ¶ 5). These policies changed again in 2019, and can now be found at title 15, §§ 3999.225–.237 of the California Code of Regulations. (Id.). Now, inmate grievances about health care are subject to two levels of review; an institutional level and a headquarters level of review. (Id. ¶ 6). Inmates' grievances about their health care are exhausted only after headquarters completes its review. (Id.). Like section 3084.2, section 3999.228(g) requires inmates to "document clearly and coherently all information known and available" to the inmate when preparing and submitting a health care grievance. (Id.).

**B.     Summary of Allegations Underlying Plaintiff's Claims**

Plaintiff repeatedly informed Dr. Conanan that he was suffering excruciating pain and could not breathe. Dr. Conanan performed an x-ray and discovered that Plaintiff had three broken ribs and internal bleeding that was not previously detected by staff at Community Regional Medical Center ("CRMC"). Despite the x-ray results, Plaintiff was ordered to return to his cell. However, two to three days later, Plaintiff was rushed to the hospital.

On or about May 21, 2016, Plaintiff was taken by ambulance to Mercy Hospital in Bakersfield for treatment of three broken ribs, internal bleeding, and removal of a developing

1 extra pleural hematoma. Dr. Mushtaq Ahmed kept Plaintiff chained to a bed with continuous
2 internal bleeding, strained breathing and in great pain for two weeks because there was no bed
3 space to be transferred to Memorial Hospital. When Plaintiff eventually arrived at Memorial
4 Hospital, a surgical procedure was attempted by use of a large needle to extract the blood which
5 if it had been done sooner would have worked. However, due to the length of delay in treatment
6 removal required a much more serious surgical procedure. Dr. Ahmed would visit Plaintiff's
7 room and state "he doesn't know what to do with me, and he actually suggest[ed] sending me
8 back to (CDCR) PVSP because of the wait."

9       Dr. Conanan falsely stated that she ordered a medical lay-in to modify Plaintiff's
10 movement so he could hear from his broken ribs and internal bleeding. Dr. Conanan also falsely
11 stated that she issued an urgent referral for Plaintiff to see a pulmonologist.

12       **C.**      **Statement of Material Undisputed Fact**

13       1.      Plaintiff was an inmate at Pleasant Valley State Prison. On October 17, 2017,
14 Plaintiff filed the first amended complaint and alleged that Dr. Marylyn Conanan was
15 deliberately indifferent to Plaintiff's rib fractures. (First Am. Compl. at 3, ECF No. 7).

16       2.      The Court recommended denying Defendant Conanan's motion for summary
17 judgment. The Court concluded that Plaintiff had generated a dispute of material fact as to
18 whether Dr. Conanan was deliberately indifferent by failing to provide a lay-in and urgent
19 referral to see a pulmonologist as noted and reflected in her medical progress notes. (ECF No.
20 92).

21       3.      On April 13, 2020, the Court granted Plaintiff's motion to amend the complaint
22 "to include his claim that Dr. Conanan failed to provide a lay-in order on May 5, 2016 as
23 reflected in her medical progress notes as well as the urgent request to see pulminologist [sic]"
24 and directed that the Second Amended Complaint, lodged on March 19, 2020, be filed. (ECF No.
25 113).

26       4.      Before September 1, 2017, all inmate grievances about health care services were
27 governed by California Code of Regulations, title 15, §§ 3084–86. (Gates Decl. ¶ 6).

28

5.  In 2016, Section 3084.2 describes the process inmates must follow when preparing the inmate grievance. The inmate must list all staff members involved in the issue, the inmate must describe each staff member's involvement in the issue under appeal, and the inmate also has to state all facts known and available to him regarding the issue under appeal at the time of submitting the inmate appeal form. (Gates Decl. ¶ 6).

6.  New procedures were officially enacted as regulations under Cal. Code Regs. tit. 15, § 3087 on September 1, 2017; however, in 2019, the health care grievances section was changed without regulatory effect and can now be found at Title 15, §§ 3999.225–.237 of the California Code of Regulations. (Gates Decl. ¶ 7).

7.  Under these regulations, inmates may grieve complaints regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC form. Such complaints are subject to two levels of review, an institutional level of review. Health care grievances are subject to a headquarters' disposition before administrative remedies are deemed exhausted. Under § 3999.227(g), inmates must "document clearly and coherently all information known and available to him" when preparing and submitting inmate health care grievances. (Gates Decl. ¶ 7).

8.  Plaintiff submitted a grievance under inmate log number PSVP HC 16052007 on August 18, 2016. (Gates Decl. ¶ 9, Ex. B).

9.  Although Plaintiff's grievance was initially cancelled for Plaintiff's failure to submit the grievance within thirty days' time of the injury, Plaintiff appealed the cancellation and was allowed to submit a grievance.[1] (Gates Decl. ¶ 9, Ex. B).

10. Plaintiff's grievance bypassed the first level of review. At the second level of review, the appeals office found that Plaintiff's care was appropriate and timely and denied Plaintiff's grievance. (Gates Decl. ¶ 10).

---

[1] Plaintiff disputes numerous facts on the ground that Defendant Conanan failed to provide proper medical treatment and/or falsified documentation However, Plaintiff cannot create a disputed of fact by merely challenging the credibility of the Defendant's facts without citing to any contradictory evidence. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983). Nor is a fact disputed because Plaintiff disagrees with it. Plaintiff must point to specific evidence that creates a dispute of fact.

11. Plaintiff subsequently appealed the second level of review's decision to the third and final level of review. The third level denied Plaintiff's grievance as articulated in his grievance form. Specifically, the third-level of review concluded that "[Plaintiff's] alleged negligent care; however [he] did not provide documentation to support [his] allegation, and it is refuted by professional health care staff familiar with [Plaintiff's] medical history, as well as [his] medical records." (Gates Decl. ¶ 11).

12. Between the denial of inmate log number PSVP HC 16052007 and February 2020, Plaintiff filed one additional grievance about Dr. Conanan's treatment. (Gates Decl. ¶ 12).

13. In this grievance, submitted on January 13, 2020, Plaintiff alleged that Dr. Conanan "used false statements of fact and fraudulent (PCP) notes." Plaintiff specifically alleged that Dr. Conanan's notes about her providing Plaintiff with a lay-in order were fraudulent and that she committed perjury. (Gates Decl. ¶ 12).

14. On January 22, 2020, Plaintiff filed a document entitled "Motion to Extend Exhaustion Motion Deadline." Plaintiff signed this motion under penalty of perjury and declared that he needed an "extension of time to exhaust" his allegation that Dr. Conanan failed to provide him with a lay-in order. (ECF No. 103).

15. Plaintiff submitted this grievance through the normal grievance process. The appeals office at Valley State Prison rejected the grievance and instructed Plaintiff to submit the grievance to the health care appeals office. (Gates Decl. ¶ 13).

16. On January 29, 2020, the Health care Grievance Office received Plaintiff's inmate grievance. The grievance was accepted and processed under inmate grievance log number VSP-HC-20000074. Plaintiff alleges that the Primary Care Progress notes authored by Dr. Conanan were fraudulent, and that she never prescribed a lay-in order for Plaintiff. (Gates Decl. ¶ 14).

17. The Office of Health Care Appeals has not completed the initial review of grievance log number VSP-HC-2000074. The office anticipates completing its initial review by April 2020. (Gates Decl. ¶ 15).

///

///

### D.     Analysis of Defendant's Motion

Defendant Conanan argues that Plaintiff's 2016 grievance did not include allegations that Dr. Conanan falsified medical records, failed to provide him with a lay in, and failed to urgently refer him to a pulmonologist. In addition, Plaintiff's January 2020 grievance, submitted three years after the instant action was filed, does not serve to exhaust his new claims because it was not exhausted prior to filing the action and/or amending the complaint.

In opposition, Plaintiff argues that his 2016 and/or 2017 grievances sufficiently grieved his claim that Defendant Conanan falsified medical records. Plaintiff also argues that "special circumstances" excuse him from the exhaustion requirement.

#### 1.     Inmate Grievance Log Number PSVP HC 16052007

In this grievance, Plaintiff alleged the following:

> I was assaulted by inmate Crosby, on 4-28-16 and driven to Fresno Hospital for a physical exam. Their quasi exam misdiagnosed three broken ribs and internal bleeding in my plu[]ral membranous sac. I suffered 2½ w[ee]k[s] having three broken ribs and bleeding internally, during which I complained to CDCR but was ignored. CDCR finally concedes to an x-ray and discover the 3-broken ribs and developing hematoma. With deliberate indifference to the findings I'm sent back to my cell with Tylenol for pain. With my right lung on the verge of collapse I can only take short breaths now, I tell medical staff and the Asian doctor sends me home again. I'm given another x-ray, the radiologist Quency [sic] sees whats [sic] now a large plueral hematoma and pneumonia in my lungs. He says I need to be hospitalized and makes a call to doctors. Once again, I'm just sent back to my cell. The Asian doctor sees me again and for the third time displays deliberate indifference. X-ray tech Quincy must of convinced somebody at the CTC of my condition because two days later, I'm rushed to the hospital. Mercy hospital informs me that too much time has passed and I will need surgery [sic]. Now I spend 1-month in hospital.

(ECF No. 115 at 40).[2]

At the second level, Plaintiff's grievance was denied on the merits, in relevant part, as follows:

> Review of your electronic Unit Health Record (eUHR) indicates you were sent to CRMC on 4/28/2016 due to head trauma and possible loss of consciousness. At this visit, you were given a CT scan of your head, abdomen and pelvic region. The results indicated there were no lacerations of your lungs and no blood in your stomach. You were discharged on 4/29/2016.

---

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

> You were seen again by your Primary Care Physician (PCP) on 5/2/2016. At this visit, your results were discussed with you. At this visit, you reported pain on your lower ribs and stated you heard a popping sound. Your PCP explained that your chest CT and x-ray results were normal. A repeat x-ray of your chest was ordered at this visit.
>
> You were seen again on 5/5/2016 to discuss your x-ray results. At this visit, your PCP explained your x-ray results showed three rib fractures. However, it is noted that the injuries were new and not visualized on the CT exam from 4/29/2016. Therefore, there is no indication of a misdiagnosis at CRMC. Your PCP prescribed Tylenol #3 as well as Ibuprofen as needed for your pain. It is noted that you refused your pain medications on 5/9/2016 in order to check your level of pain.
>
> A repeat x-ray was ordered on 5/12/2016 and you were seen by your PCP on 5/19/2016. At this visit, your PCP reviewed your x-ray and found new right lung opacity. It is noted you were in stable condition and an urgent referral to Pulmonology was completed. You were sent to TTA on 5/20/2016 due to shortness of breath and sent to Mercy Hospital. The recommendation from Mercy Hospital was for elective evacuation of the clot.
> Further review of your eUHR indicates care was appropriate and timely. You alleged negligent care; however, you did not provide documentation to support your allegation and it is refuted by professional health care staff familiar with your medical history, as well as a review of your medical records. While you may not agree with the medical decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your medical needs.

(Gates Decl. Ex. D, ECF No. 107-3 at 25–26). At the third level, Plaintiff's grievance was denied on the merits, finding that the "Second Level Response thoroughly addressed the health care provided to [Plaintiff] in relation to the complaint, and is sustained at the Director's Level." (ECF No. 115 at 38).

Although inmate grievance log number PSVP HC 16052007 was exhausted through the third level of review, the grievance did not include allegations that Defendant Conanon falsified medical records, failed to provide Plaintiff with a lay in, and failed to urgently refer Plaintiff to a pulmonologist. Accordingly, Defendant has met her initial burden of proof in demonstrating that Plaintiff failed to exhaust the administrative remedies as to these claims. The burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1166.

In his opposition, Plaintiff apparently concedes that his claims regarding Defendant Conanon's falsification of medical records, failure to provide Plaintiff with a lay in, and failure

to urgently refer Plaintiff to a pulmonologist is unexhausted. (ECF No. 115 at 6). Plaintiff argues, however, that Defendant Conanon should be estopped from asserting the affirmative defense of exhaustion due to fraud and misrepresentation. (Id. at 8–16).

Failure to exhaust may be excused where the administrative remedies have been rendered "unavailable," and in such a case, the plaintiff bears the burden of demonstrating that the grievance process was unavailable to him through no fault of his own. Sapp v. Kimbrell, 623 F.3d 813, 822–23 (9th Cir. 2010); see also Ward v. Chavez, 678 F.3d 1042, 1044–45 (9th Cir. 2012) (exhaustion excused where futile); Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown, 422 F.3d at 939–40 (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available). Aside from this single exception, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'... [a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross, 136 S. Ct. at 1856.

Ross recognized three circumstances in which administrative remedies that are on the books may not be capable of use to obtain relief. 136 S. Ct. at 1859. First, where it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Id. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." Id. Second, an administrative remedy might be so opaque that it is incapable of use. Id. This occurs where there is a system in place, but no ordinary prisoner can discern or navigate it. Id. Finally, the administrative process is unavailable when prison administrators thwart inmates from taking advantage of the process through machination, misrepresentation, or intimidation. Id. at 1860. That is, when "officials misle[a]d or threaten[] individual inmates so as to prevent their use of otherwise proper procedures." Id.

Plaintiff has failed to submit evidence to support a finding that prison administrators thwarted Plaintiff from taking advantage of the administrative process through fraud or misrepresentation. See Ross, 136 S. Ct. at 1860 & n.3. Plaintiff's allegations are belied by the evidence in the record. Plaintiff has pursued one grievance against Defendant Conanon through

the third level of review and has another grievance currently under review. This demonstrates that the grievance process remained available to him and did not prevent Plaintiff's use of the proper procedures. Accordingly, Plaintiff has failed to demonstrate that any fraud or misrepresentation excused him from exhausting the administrative remedies.

### 2. Inmate Grievance Log Number MCSP HC-17051394

In this grievance, Plaintiff alleged the following:

> Since the end of April, I've yet received "all" requested records. After submitting a 7385 form and subsequent CDCR 22 Forms inquiring why I have not received them. N. Voss, with deliberate indifference to title 15 policy refused to answer those three CDCR form 22s; however, to minimize the appearance of collusion, N. Voss concedes to provide me with some records. I requested records covering 4-26-16 to 8-1-16. N. Voss tactfully failed to provide May and June. So N. Voss gave me End of April—holds back May and half of June. And continues giving me all of July. How do you unintentionally withhold May/June. And continues giving me June. This is a deliberate attempt not to make available May and June. So for the record any collusion to obstruct, alter for the purpose or findings of medical facts, deny or provide personal provide medical records to anyone without proper authorization is an actionable offense.

(ECF No. 115 at 30). In response, the third level of review noted "[Plaintiff] alleged falsified information in your medical records, but failed to state facts, specify an act, or provide documents consistent with the allegation." (Id. at 26). This grievance fails to notify the prison about the specific claim Plaintiff now seeks to make about Dr. Conanan.

Further, even if the vague offering Plaintiff made about "collusion to obstruct, alter medical facts" placed the prison on notice of the claim that Dr. Conanan had falsified her progress notes, Plaintiff failed to exhaust this allegation *before* he initiated this lawsuit. "[E]xhaustion requirements are […] routinely enforced by 'dismissing a suit that begins too soon, even if the plaintiff exhausts administrative remedies while the litigation is pending." Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006). According to Plaintiff's own exhibit, the third level decision was not issued until February 2018. (ECF No. 115 at 26). Thus, Plaintiff acknowledges he was trying to exhaust this allegation as he was litigating his lawsuit against Dr. Conanan.

Based on the foregoing, Plaintiff has not exhausted his claims regarding Defendant Conanon's falsification of medical records, failure to provide Plaintiff with a lay in, and failure

to urgently refer Plaintiff to a pulmonologist. Therefore, Defendant Conanon's motion for summary judgment should be granted.

## IV.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Defendant Conanon's motion for summary judgment (ECF No. 107) be GRANTED; and
2. The claims regarding Defendant Conanon's falsification of medical records, failure to provide Plaintiff with a lay in, and failure to urgently refer Plaintiff to a pulmonologist be DISMISSED WITHOUT PREJUDICE for failure to exhaust the administrative remedies.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 31, 2020**

UNITED STATES MAGISTRATE JUDGE