UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS CURTIS HISLE,<br><br>  Plaintiff,<br><br>  v.<br><br>MARLYN CONANAN, et al.,<br><br>  Defendants. | Case No. 1:17-cv-01400-NONE-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PARTIES' MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 127, 128) |

Plaintiff Dennis Curtis Hisle is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Ahmed's motion for summary judgment, filed on September 11, 2020, and Plaintiff's motion for summary judgment, filed on September 14, 2020. (ECF Nos. 127, 128.)

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Conanan and Ahmed for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

Defendant Ahmed filed an answer to the complaint on October 30, 2019. (ECF No. 91.)

On November 1, 2019, the Court issued the discovery and scheduling order. (ECF No. 92.)

1

After Plaintiff amended the complaint, Defendant Ahmed filed an amended answer on April 29, 2020.  (ECF No. 119.)

On September 11, 2020, Defendant Ahmed filed the instant motion for summary judgment. (ECF No. 127.)  On October 29, 2020, Plaintiff filed an opposition to Defendant Ahmed's motion for summary judgment.  (ECF No. 134.)  Defendant Ahmed filed a reply on November 5, 2020.  (ECF No. 135.)

On September 14, 2020, Plaintiff filed a motion for summary judgment as to his claims against Defendant Ahmed.  (ECF No. 128.)  On September 29, 2020, Defendant Ahmed filed an opposition to Plaintiff's motion for summary judgment.  (ECF No. 132.)  Plaintiff filed a reply on October 19, 2020. (ECF No. 133.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  Tulalip Tribes of Washington v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015); Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).  A cross-motion for summary judgment requires the court to apply the same standard and rule on each motion independently. Creech

v. N.D.T. Indus., Inc., 815 F. Supp. 165, 166–67 (D.S.C. 1993). When both parties have moved for summary judgment, "[t]he granting of one motion does not necessarily warrant the denial of the other motion, unless the parties base their motions on the same legal theories and same set of material facts." Stewart v. Dollar Fed. Sav. & Loan Ass'n, 523 F. Supp. 218, 220 (S.D. Ohio 1981) (citing Schlytter v. Baker, 580 F.2d 848, 849 (5th Cir. 1978)).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Complaint[1]

Defendant M. Ahmed allowed Plaintiff to lay chained to his bed while in a continuous state of

---

[1] The sets forth allegations relating only to Defendant Ahmed.

3

1  internal bleeding until the pleural hematoma opacity developed to a size that collapsed his lung.  For
2  two weeks, Plaintiff bleed while under Dr. Ahmed's care, who told Plaintiff that he did not know what
3  to do with him and maybe should be send back to the prison.  Plaintiff, bleed internally, for a period of
4  over one month from the date of injury before admission to a hospital that could correctly treat his
5  injury.  Ahmed turned a blind eye to Plaintiff's suffering and immediate need for surgery.

6       **B.**       **Plaintiff's Motion for Summary Judgment**

7       Plaintiff moves for summary judgment and argues it is undisputed that Dr. Ahmed oversaw
8  Plaintiff's guided aspiration attempt which failed causing greater significant injury and suffering.
9  Plaintiff expressed the increased significant pleuritic chest wall pain and difficulty breathing, but
10 Plaintiff was made to remain in a state of excruciating pain and shortness of breath for an additional
11 week.

12       Defendant Ahmed argues that Plaintiff's motion for summary judgment should be denied in its
13 entirety because Plaintiff has not established that there is no triable issue of material fact as to whether
14 or not he was deliberately indifference to a serious medical for Plaintiff.

15       1.       <u>Statement of Undisputed Facts</u>

16       a.       Mushtaq Ahmed M.D., you were the physician that dr. George, at P.V.S.P. spoke with
17 and arranged acceptance for plaintiff to Mercy Hospital.  (Declaration of Plaintiff (Pl. Decl.), Ex. A.)

18       b.       Mushtaq Ahmed M.D., upon admittance on 5-20-16, plaintiff had been received having
19 pneumonia.  (Pl. Decl., Ex. B.)

20       c.       Mushtaq Ahmed M.D., upon admittance on 5-20-16, plaintiff had been received having
21 atelectasis.  (Pl. Decl., Ex. C.)

22       d.       Mushtaq Ahmed M.D., upon admittance, plaintiff on 5-20-16, also presented having a
23 loculated pleural hematoma that measured up to 9.7 x 6.2 cm in axial plan and 11.6 cm in
24 craniocaudad dimension.  (Pl. Decl., Ex. C1.)

25       e.       Dr. Ahmed provided care and treatment to plaintiff over an approximate two week
26 period.  (Pl. Decl., Ex. I.)

27       2.       <u>Analysis of Plaintiff's Motion</u>

28       While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical

care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989), overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). ). In addition, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1977); Snow v. McDaniel, 681 F.3d at 987-88, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122.

Here, Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law. It is undisputed that Defendant Dr. Mushtaq arranged for Plaintiff's acceptance at Mercy Hospital. (PUdF a.) When Plaintiff was admitted to Mercy Hospital on May 20, 2016, he presented with pneumonia and atelectasis. (PUdF b-c.) Plaintiff also presented having a loculated pleural hematoma that measured up to 9.7 x 6.2 cm in axial plan and 11.6 cm in craniocaudad dimension. (PUdF d.) Dr. Ahmed provided care and treatment to plaintiff over an approximate two week period. (PUdF e.)

In opposition, Defendant submits that the declaration of Dr. Andrew Wachtel establishes that Dr. Ahmed met the applicable standard of care in providing medical care and treatment to Plaintiff, and Dr. Ahmed was not deliberately indifferent in any aspect of his involvement in Plaintiff's care and treatment.

Dr. Wachtel declares, after review of the relevant medical records, that "it is my professional opinion that Dr. Mushtaq Ahmed fully and completely met the applicable standard of care for a physician specializing in the field of Internal Medicine as it relates to the care and treatment he provided to [Plaintiff] between May 20, 2016 and June 30, 2016. It is also my opinion that, to a reasonable degree of medical probability, there is nothing Dr. Ahmed either did or did not do that played a substantial factor in causing any injury, harm, or damage to [Plaintiff]." (Declaration of Andrew Wachtel (Wachtel Decl.) ¶ 7.)

Plaintiff argues as follows:

> For Dr. Ahmed to have not prepared a 'plan of action' if aspiration failed, leading to greater significant bleeding and excruciating pain for plaintiff is at minimal gross negligence. But when Dr. Ahmed's, 'plan of action' was to consciously disregard the result of his actions that caused greater bleeding, significant compressive atelectasis and dyspnea, and then leave plaintiff in agonizing state of relentless excruciating pain with breathing difficulty for over one week period until transfer to Memorial, well that's when Dr. Ahmed's actions of conduct went from gross negligence to deliberate indifference, exhibiting obduracy and wantonness and causing cruel and unusual punishment to plaintiff.

(Pl. Mot. at 26, ECF No. 128.)

In deciding a motion for summary judgment, a court may not resolve conflicting evidence. Soremekun v. Thrifty Payless, Inc., 509 F.3d at 984. Rather, summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 US 242, 248 (1986). Plaintiff has failed to carry his initial burden of demonstrating that summary judgment is proper and that no reasonable trier of fact could find other than for him.

Defendant has presented expert testimony by Dr. Wachtel who declares that Dr. Ahmed fully and completely met the applicable standard of care in all aspects of the care and treatment he provided to Plaintiff at all times. (Wachtel Decl. ¶ 8.) Although Plaintiff disputes whether Defendant Dr.

6

Ahmed's care and treatment was deliberately indifferent, Defendant's evidence creates a genuine dispute of material fact regarding whether Defendant acted reasonably in treating Plaintiff while at Mercy Hospital which precludes the grant of summary judgment in favor of Plaintiff.  Based on the evidence presented, Plaintiff has failed to demonstrate, as a matter of law, that there is no triable issue of material fact as to whether or not Dr. Ahmed was deliberately indifference to a serious medical for Plaintiff.  Accordingly, Plaintiff's motion for summary judgment as a matter of law must be denied.

### C. Defendant Ahmed's Motion for Summary Judgment

Defendant Dr. Ahmed argues the undisputed demonstrates that he met the applicable standard of care in all respects during the care and treatment rendered to Plaintiff. Further, nothing Defendant Dr. Ahmed did or did not do was, to a reasonable degree of medical probability, a substantial factor in causing plaintiff's alleged injuries or making them worse. As there was no professional / medical negligence on behalf of Dr. Ahmed, there was likewise no "deliberate indifference" to any serious medical need of plaintiff by Dr. Ahmed. As such, Plaintiff's claim for a violation of 42 U.S.C. 1983 must fail, and judgment must be entered in favor of Dr. Ahmed and against Plaintiff accordingly.

#### 1. Defendant's Statement of Undisputed Facts[2]

a. On May 20, 2016, Plaintiff was seen in the emergency department of Mercy Hospital in Bakersfield, California.  (Wachtel Decl. ¶ 6(a); Declaration of Kevin Thelen (Thelen Decl.) ¶ 8 & Ex. G, Bates pp. 493-494.)

b. Dr. Ahmed also evaluated Plaintiff on May 20, 2016, where he noted the presence of a mass on the patient's right lung seen on imaging study, which Dr. Ahmed believed represented a likely pleural collection of blood that was a hematoma/loculated pneumothorax and led Dr. Ahmed to admit that patient, order a CT scan of the chest, offer symptomatic treatment for the patient, and have Plaintiff undergo incentive spirometry to assist with pulmonary function.[3]   (Wachtel Decl. ¶ 6(b); Thelen Decl. ¶ 8 & Ex. G, Bates pp. 23-24.)

---

[2] Hereinafter "DUdF."

[3] Plaintiff's assertions relating to other notations made by Dr. Ahmed on this date are beyond the scope of this statement as presented by Defendant.

7

      c.     Dr. Ahmed prepared handwritten progress notes indicating that the patient was seen on May 21 and May 22, with the May 22 note specifically referencing a plan for an attempted drainage of the patient's hematoma being pending.  (Wachtel Decl. ¶ 6(d); Thelen Decl. ¶ 8 & Ex. G, Bates pp. 445, 447.)

      d.     On May 23, 2016, Dr. Ahmed noted that Plaintiff had been doing OK with occasional chest pain on the right side, and that same day, a CT-guided hematoma aspiration by needle was performed by Dr. David Condie, which resulted in only 19 mL of clotted blood being aspirated, indicating that the blood had been presented for a period of time and did not represent an ongoing or active/acute bleed.  (Wachtel Decl. ¶¶ 6(e), 6(f); Thelen Decl. ¶ 8 & Ex. G, Bates pp. 449, 464.)

      e.     On May 24, 2016, a repeat CT scan of the chest following Dr. Condie's drainage attempt showed little change from the prior scan, and it was determined that Plaintiff would likely need surgical intervention to evacuate the coagulated blood.[4]  (Wachtel Decl. ¶ 6(g); Thelen Decl. ¶ 8 & Ex. G, Bates pp. 451, 465.)

      f.     When Dr. Ahmed saw Plaintiff on May 25, 2016, Plaintiff remained stable from a vital signs perspective (albeit with complaints of right sided chest pain and some difficult/labored breathing on exertion), and Dr. Ahmed's plan was to recommend the patient undergo evaluation by a thoracic surgeon for a potential decortication procedure, which would require Plaintiff to be transferred to Bakersfield Memorial Hospital.[5]  (Wachtel Decl. ¶ 6(h); Thelen Decl. ¶ 8 & Ex. G, Bates p. 452.)

      g.     Plaintiff was seen by Dr. Ahmed on May 26 and May 27, seen by Dr. Alpha Anders (on behalf of Dr. Ahmed) on May 28 and May 29, and Plaintiff received breathing treatments, a short course of Rocephin and Levaquin antibiotics, and had regular blood work performed.[6]  (Wachtel Decl. ¶ 6(i); Thelen Decl. ¶ 8 & Ex. G, Bates pp. 453-459.)

---

[4] Plaintiff cannot attempt to dispute this statement of fact by way of his lay opinion and interpretation of Dr. Ahmed's medical notes.  Fed. R. Evid. 701.

[5] Plaintiff cannot attempt to dispute this statement of fact by way of his lay opinion and interpretation of Dr. Ahmed's medical notes.  Fed. R. Evid. 701.

[6] Plaintiff's assertions relating to the pain he suffered and subsequent medical determinations by other professionals is beyond the scope of this statement.

8

   h. Dr. Ahmed returned and saw Plaintiff on May 30 and May 31, dictating a discharge summary of May 31 that confirmed that during the time Plaintiff was awaiting transfer to Bakersfield Memorial Hospital, he remained stable and had no change in the underlying condition that led to his hospital admission.[7]  (Wachtel Decl. ¶ 6(j); Thelen Decl. ¶ 8 & Ex. G, Bates pp. 460-461.)

   i. Plaintiff was transferred to Bakersfield Memorial Hospital from Mercy Hospital on May 31, 2016, where Dr. Ahmed was the admitting physician for Plaintiff.  (Wachtel Decl. ¶ 6(k); Thelen Decl. ¶ 8 & Ex. G, Bates p. 2; and ¶ 6, Ex. E, Bates p. 19.)

   j. Plaintiff received a cardiothoracic surgery consultation with Eric Peck, M.D. on June 1, 2016, in which Dr. Peck noted that Plaintiff remained stable in light of his large extrapleural hematoma, and the plan was to have Plaintiff undergo a right thoracotomy and evacuation of the pleural hematoma.[8]  (Wachtel Decl. ¶ 6(k); Thelen Decl. ¶ 6 & Ex. E, Bates pp. 17-18.)

   k. Plaintiff was scheduled for his right thoracotomy and evacuation procedure on June 2, but it did not go forward on that date secondary to an inability to obtain the necessary authorization to move forward with that procedure.  (Wachtel Decl. ¶ 6(l); Thelen Decl. ¶ 6 & Ex. E, Bates p. 505.)

   l. Plaintiff underwent a right thoracotomy and evacuation of his extrapleural hematoma with Dr. Erick Peck on June 3, 2016, and the surgery was successfully completed without complication followed by Plaintiff being taken to the ICU post-operatively in stable condition with later imaging studies showing no evidence of the previously present hematoma being present or identified.[9]  (Wachtel Decl. ¶ 6(m); Thelen Decl. ¶ 6 & Ex. E, Bates pp. 514-515, 522-523.)

   m. Dr. Ahmed saw Plaintiff on June 4 (post-operative day one), and Plaintiff was stable

---

[7] Plaintiff's interpretation of the medical notes and opinion as to his stability and medical condition do not dispute this statement of fact as presented by Defendant.  Fed. R. Evid. 701.  Furthermore, subsequent medical determinations are beyond the scope of this statement.

[8] Plaintiff contends that Dr. Peck's handwritten notation of the medical evaluation on June 1, 2016, states that he was not stable.  However, Plaintiff is not qualified to interpret Dr. Peck's handwritten notations, and there is no evidence beyond Plaintiff's lay interpretation that Dr. Peck's handwritten notation states "Not stable" versus "HCT" meaning  "hematocrit stable" which is consistent with the dictated notes by Dr. Peck and Dr. Wachtel's interpretation.  Therefore, this fact remains undisputed.

[9] Plaintiff's assertions and interpretation of the medical notes are beyond the scope of this statement.

and doing well such that he was cleared by cardiothoracic surgery to be moved from the ICU to a telemetry floor. (Wachtel Decl. ¶ 6(n); Thelen Decl. ¶ 6 & Ex. E, Bates p. 506.)

     n.     A chest x-ray of June 5, 2016 showed no interval change from the prior June 4 chest x-ray, which meant Plaintiff did not begin to experience any acute bleeding following surgery with Dr. Peck, and an ultrasound of the lower extremities performed on June 6 showed no deep vein thrombosis ("DVT") in either lower extremity.[10] (Wachtel Decl. ¶ 6(o); Thelen Decl. ¶ 6 & Ex. E, Bates pp. 516-517.)

     o.     Plaintiff was discharged from Bakersfield Memorial Hospital back to correctional custody by Dr. Ahmed on June 7, 2016, and at the time of discharge, Plaintiff's white blood cell count was normal, his chest tubes had been removed, his hematoma had completely dissolved, he was oxygenating well on room air, and he was discharged with Levaquin, an inhaler, Motrin, and Norco with a request for follow-up with Dr. Ahmed for a telemedicine consult in 2-4 weeks and to undergo a follow-up chest x-ray.[11] (Wachtel Decl. ¶ 6(p); Thelen Decl. ¶ 4 & Ex. E, Bates pp. 2-3.)

     p.     Dr. Ahmed saw Plaintiff by way of telehealth/telemedicine consultation on June 30, 2016 wherein Plaintiff complained of occasional right sided chest pain and occasional cough, and Dr. Ahmed requested that Plaintiff continue with his current management and return in two months after an interval chest x-ray was performed. (Wachtel Decl. ¶ 6(q); Thelen Decl. ¶ 6 & Ex. C, Bates p. 1.)

     q.     It appears that June 30, 2016 was the last involvement that Dr. Ahmed had in Plaintiff's care and treatment relating to his right pulmonary issues. (Wachtel Decl. ¶ 6(q).)

     2.     <u>Analysis of Defendant's Motion</u>

As previously stated, while the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d at 985; <u>Wilhelm v. Rotman</u>, 680 F.3d at 1122; <u>Jett v. Penner</u>, 439 F.3d at 1096. Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further

---

[10] Plaintiff's assertions and interpretation of the medical notes are beyond the scope of this statement.

[11] Plaintiff's assertions and interpretation of the medical notes are beyond the scope of this statement.

significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d at 242), overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d at 332. Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). ). In addition, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; Snow v. McDaniel, 681 F.3d at 987-88, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122.

Here, it is undisputed that on May 20, 2016, Plaintiff was seen in the emergency department of Mercy Hospital in Bakersfield, California. (DUdF a.) Dr. Ahmed also evaluated Plaintiff on May 20, 2016, where he noted the presence of a mass on the patient's right lung seen on imaging study, which Dr. Ahmed believed represented a likely pleural collection of blood that was a hematoma/loculated pneumothorax and led Dr. Ahmed to admit that patient, order a CT scan of the chest, offer symptomatic treatment for the patient, and have Plaintiff undergo incentive spirometry to assist with pulmonary function. (DUdF b.) Dr. Ahmed prepared handwritten progress notes indicating that the patient was seen on May 21 and May 22, with the May 22 note specifically referencing a plan for an attempted drainage of the patient's hematoma being pending. (DUdF c.)

On May 23, 2016, Dr. Ahmed noted that Plaintiff had been doing OK with occasional chest pain on the right side, and that same day, a CT-guided hematoma aspiration by needle was performed by Dr. David Condie, which resulted in only 19 mL of clotted blood being aspirated,

indicating that the blood had been presented for a period of time and did not represent an ongoing or active/acute bleed.  (DUdF d.)

On May 24, 2016, a repeat CT scan of the chest following Dr. Condie's drainage attempt showed little change from the prior scan, and it was determined that Plaintiff would likely need surgical intervention to evacuate the coagulated blood.  (DUdF e.)

When Dr. Ahmed saw Plaintiff on May 25, 2016, Plaintiff remained stable from a vital signs perspective (albeit with complaints of right sided chest pain and some difficult/labored breathing on exertion), and Dr. Ahmed's plan was to recommend the patient undergo evaluation by a thoracic surgeon for a potential decortication procedure, which would require Plaintiff to be transferred to Bakersfield Memorial Hospital.  (DUdF f.)  Plaintiff was seen by Dr. Ahmed on May 26 and May 27, seen by Dr. Alpha Anders (on behalf of Dr. Ahmed) on May 28 and May 29, and Plaintiff received breathing treatments, a short course of Rocephin and Levaquin antibiotics, and had regular blood work performed.  (DUdF g.)

Dr. Ahmed returned and saw Plaintiff on May 30 and May 31, dictating a discharge summary of May 31 that confirmed that during the time Plaintiff was awaiting transfer to Bakersfield Memorial Hospital, he remained stable and had no change in the underlying condition that led to his hospital admission.  (DUdF h.)  Plaintiff was transferred to Bakersfield Memorial Hospital from Mercy Hospital on May 31, 2016, where Dr. Ahmed was the admitting physician for Plaintiff.  (DUdF i.)

Plaintiff received a cardiothoracic surgery consultation with Eric Peck, M.D. on June 1, 2016, in which Dr. Peck noted that Plaintiff remained stable in light of his large extrapleural hematoma, and the plan was to have Plaintiff undergo a right thoracotomy and evacuation of the pleural hematoma.  (DUdF j.)  Plaintiff was scheduled for his right thoracotomy and evacuation procedure on June 2, but it did not go forward on that date secondary to an inability to obtain the necessary authorization to move forward with that procedure.  (DUdF k.)

Plaintiff underwent a right thoracotomy and evacuation of his extrapleural hematoma with Dr. Erick Peck on June 3, 2016, and the surgery was successfully completed without complication followed by Plaintiff being taken to the ICU post-operatively in stable condition with

later imaging studies showing no evidence of the previously present hematoma being present or identified. (DUdF l.)

Dr. Ahmed saw Plaintiff on June 4 (post-operative day one), and Plaintiff was stable and doing well such that he was cleared by cardiothoracic surgery to be moved from the ICU to a telemetry floor. (DUdF m.)

A chest x-ray of June 5, 2016 showed no interval change from the prior June 4 chest x-ray, which meant Plaintiff did not begin to experience any acute bleeding following surgery with Dr. Peck, and an ultrasound of the lower extremities performed on June 6 showed no deep vein thrombosis ("DVT") in either lower extremity. (DUdF n.)

Plaintiff was discharged from Bakersfield Memorial Hospital back to correctional custody by Dr. Ahmed on June 7, 2016, and at the time of discharge, Plaintiff's white blood cell count was normal, his chest tubes had been removed, his hematoma had completely dissolved, he was oxygenating well on room air, and he was discharged with Levaquin, an inhaler, Motrin, and Norco with a request for follow-up with Dr. Ahmed for a telemedicine consult in 2-4 weeks and to undergo a follow-up chest x-ray. (DUdF o.)

Dr. Ahmed saw Plaintiff by way of telehealth/telemedicine consultation on June 30, 2016 wherein Plaintiff complained of occasional right sided chest pain and occasional cough, and Dr. Ahmed requested that Plaintiff continue with his current management and return in two months after an interval chest x-ray was performed. (DUdF p.) It appears that June 30, 2016 was the last involvement that Dr. Ahmed had in Plaintiff's care and treatment relating to his right pulmonary issues. (DUdF q.)

Defendant submits the expert opinion of Dr. Andrew Wachtel in support of his motion. According to his curriculum vitae, Dr. Wachtel received his Bachelor of Science degree in biology from Rensselaer Polytechnic Institute in Troy, New York in 1981. He also received his medical degree from Albany Medical College in Albany, New York in 1981. He completed his medical degree with an internship and residency between July of 1981 and June of 1984 at Long Island Jewish-Hillside Medical Center. He then underwent subspeciality fellowship training in pulmonary diseases at Cedars-Sinai Medical Center in Los Angeles, California from July 1984 to June 1986. He is board

certified American Board of Internal Medicine in the fields of internal medicine, pulmonary diseases, and critical care medicine.

From 1986 to present, Dr. Wachtel is in private practice at Cedars-Sinai Medical Center. (Wachtel Decl. Ex. A.) He has given several lectures, written general research papers and abstracts peer review, and conducted several research studies as principal or sub-investigator. (Id.) The Court finds that Dr. Wachtel may opine on the evaluation, care, and treatment of Plaintiff rendered by Dr. Ahmed.[12] Dr. Wachtel possesses knowledge of the standard of professional learning, skill, and care required of a physician in the fields of internal medicine, pulmonary diseases, and critical care medicine, and based upon his education, training, experience and qualifications, he is thoroughly familiar with the degree of learning and skill ordinarily possessed by reputable medical doctors in those fields in the State of California, including the San Joaquin Valley, where Plaintiff was treated by Dr. Ahmed. In addition, Dr. Wachtel is qualified to testify as to whether Defendant caused Plaintiff's alleged injuries. See, e.g., Brown v. Pac. Gas & Elec. Co., Case No. EDCV 16-0654 DMG (KKx), 2018 WL 5270494, at *7 (C.D. Cal. June 25, 2018) (citing Sanderson v. Int'l Flavors & Fragrances, Inc., 950 F. Supp. 981, 1003 (C.D. Cal. 1996)). In sum, the Court finds that Dr. Wachtel's declaration is admissible as to whether the care rendered by Dr. Ahmed breached the standard of care. Further, the Court concludes that Dr. Wachtel is qualified to testify as to whether Dr. Ahmed's care caused

---

[12] Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); see also Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 "contemplates a *broad conception* of expert qualifications." Hangarter, 373 F.3d at 1018 (emphasis in original). Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000); see also Fed. R. Evid. 702. Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010). To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." Id. at 564.

1  Plaintiff harm.  Trujillo v. Cty. of Los Angeles, 751 F.App'x 968, 970-71 (9th Cir. 2018) ("Expert
2  witnesses may offer opinions on matters of which they do not have firsthand knowledge so long as it is
3  permissible in their discipline.") (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592
4  ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on
5  firsthand knowledge or observation.")).

6  There is no dispute that plaintiff had a serious medical need while an inmate at Mercy
7  Southwest Hospital and Bakersfield Memorial Hospital between May 20, 2016 and June 7, 2016.
8  Therefore, there is no genuine issue of material fact as to the first prong of Plaintiff's deliberate
9  indifference claim. The only remaining issue is whether there is a genuine issue of material fact
10 concerning Defendant's failure to respond to Plaintiff's medical need in a manner that caused him
11 harm in violation of the Eighth Amendment. Jett, 439 F.3d at 1096.

12 Upon Plaintiff's transfer to Mercy Hospital, Dr. Ahmed examined Plaintiff in a timely and
13 appropriate manner, and made the decision to admit Plaintiff which Dr. Wachtel deems to be wholly
14 reasonable and within the applicable standard of care.  (Wachtel Decl. ¶ 7(a).)  While Plaintiff was at
15 Mercy Hospital, Dr. Ahmed arranged for the appropriate consultations with specialists in a timely
16 manner to treat Plaintiff and Dr. Wachtel opines that the medical determinations by Dr. Ahmed met
17 the applicable standard of care.  (Wachtel Decl. ¶¶ 7(b), 7(c).)  Indeed, it is undisputed that Plaintiff
18 was seen on a daily basis by either Dr. Ahmed or Dr. Alpha Anders prior to Plaintiff's transfer to
19 Bakersfield Memorial Hospital.  (DUdF c, d, e, f, g, h.)  During his time at Mercy Hospital, Plaintiff's
20 vital signs remained stable at all times and he was never in any kind of hemodynamic distress.
21 Wachtel Decl. ¶ 7(c).)  Dr. Ahmed initially contacted interventional radiologist David Condie, M.D. to
22 consult with Plaintiff in an attempt to initiate a needle aspiration of the right lung mass on May 23,
23 2016, which is a less invasive procedure than a thoracotomy.  (Wachtel Decl. ¶ 7(b).)  When the
24 needle aspiration unfortunately failed to remove the hematoma, Dr. Ahmed searched for and finally
25 found a cardiothoracic surgeon willing to consult with Plaintiff, which resulted in a right thoracotomy
26 and evacuation of his extrapleural hematoma with Dr. Peck.  (Id.)  There is no evidence that Dr.
27 Ahmed's actions or lack thereof unreasonably delayed the transfer process or hematoma evacuation
28 procedure performed by Dr. Peck on June 3, 2016.  As noted by Dr. Peck, the hematoma represented a

possible source of infection (Plaintiff had been receiving prophylactic antibiotics at Mercy Hospital), in addition it was causing significant compressive atelectasis of the right upper lobe of the lung. Dr. Wachtel opines that the nature of the hematoma evacuation procedure by Dr. Peck, and any potential difficulties or possible complications that could be encountered (of which no evidence exists) did not change from May 24 to June 3, 2016, and Plaintiff's care, treatment, and surgical plan would have remained the same at any point in time between May 24 and June 3. (Wachtel Decl. ¶ 7(e).)

After the right thoracotomy and evacuation of the extrapleural hematoma by Dr. Peck on June 2, 2016, Plaintiff was evaluated by Dr. Ahmed at Bakersfield Memorial Hospital until his discharge four days later on June 7, 2016. (Wachtel Decl. ¶ 7(f).) During this time, Plaintiff's bronchitis was appropriately managed with antibiotics and Plaintiff was discharged on room air—not needing oxygen from another source—which indicated he had no significant compromise to his respiratory system at that time, which was a notable improvement from his initial presenting condition. (Wachtel Decl. ¶ 7(f).)

Upon discharge from Bakersfield Memorial Hospital, Dr. Ahmed provided appropriate medications which included Levaquin, Xopenex inhaler, Motrin, and Norco, along with a request for incentive spirometry at the correctional infirmary, and a request for a telemedicine follow-up with Dr. Ahmed in 2-4 weeks. (Wachtel Decl. ¶ 7(g).) The telemedicine follow-up examination with Dr. Ahmed took place on June 30, 2016, and Plaintiff complained of occasional right chest pain and occasional cough. Dr. Ahmed requested that Plaintiff continue his current management and was instructed to return for a follow-up visit in two months with an interval chest x-ray. No documented follow-up is noted, and it appears that this was the last involvement that Dr. Ahmed had in Plaintiff's care and treatment relating to his right pulmonary issues. (Wachtel Decl. ¶ 6(q).)

Dr. Wachtel opines that to a reasonable degree of medical probability, there is no indication that during the time between Dr. Condie's needle aspiration at Mercy Hospital on May 23, 2016, and Plaintiff's transfer to Bakersfield Memorial Hospital on May 31, 2016, Plaintiff suffered any injury, which was confirmed by serial imaging studies done that showed no significant change to the right extrapleural fluid collection the right upper lung. (Wachtel Decl. ¶ 7(c).) Further, contrary to Plaintiff's argument, there is no evidence from the imaging studies from May 23 to May 31, 2016 that

any passage of time resulted in a larger hematoma formation or any condition or progression of any existing condition that could have made Plaintiff's surgery with Dr. Peck more difficult or risky. (Wachtel Decl. ¶ 7(d).)  Lastly, Dr. Wachtel opines that to a reasonable degree of medical probability, there is nothing Dr. Ahmed did or did not do that played a substantial factor in causing any injury, harm, or damage to Plaintiff because transfers involving patients who are in corrections custody are inherently complicated due to coordination issues with insurance, the correctional institution, and the receiving hospital.[13]  (Wachtel Decl. ¶ 7(d).)

The Court finds that Defendant Dr. Ahmed has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish the existence of a genuine issue of material fact with respect to his claims of inadequate medical care.  See Matsushita Elec. Indus., 475 U.S. 573, 586 (1986).

In opposition, Plaintiff attempts to present his own personal opinions and interpretation of the medical records and evidence to opine as to the reasonableness of Dr. Ahmed's medical treatment. Plaintiff's attempt to do so is improper and Plaintiff's reliance on Behr v. Redmond, 193 Cal.App.4th 517 (2011) is misplaced.  While a lay witness may generally testify as to his of knowledge of his disease, injuries, or physical condition, Behr v. Redmond, 1983 Cal.App.4th at 528, a lay witness may not testify as to matters based on scientific, technical, or other specialized knowledge within the scope of an expert witness.  Fed. R. Evid. 701, 702; see also United States v. Conn., 297 F.3d 548, 554 (7th Cir. 2002) (lay witness testimony generally summarizes first-hand sensory observations and "is not to provide specialized explanations or observations that an untrained layman could not make if perceiving the same acts or events.") (quoting United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001) ); Hanger Prosthetics & Orthopedics, Inc. v. Capstone, Orthopedic, Inc., No. 2:06-cv-02879-GEB-KJM, 2008 WL 2441067, at *2 (E.D. Cal. June 13, 2008) ("The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday

---

[13] "Causation is, of course, a required element of a § 1983 claim."  Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999); Lee v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

17

life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (internal punctuation and citations omitted).

Plaintiff attempts to bolster his claim that Dr. Ahmed provided inadequate treatment by pointing to a handwritten notation by Dr. Peck on June 1, 2016, which he contends states Plaintiff was "not stable." (Pl. Opp'n, Ex. C3.) Plaintiff contends that "though all retyped care notes list plaintiff as stable, on 6-1-16, upon arrival to Memorial hospital, doctors had written note clearly states plaintiff 'was not stable.'" (Pl. Opp'n at 7-8, ECF No. 134.) However, Dr. Wachtel declares that, "Dr. Peck noted following his evaluation of the patient that he remained stable in light of his large extrapleural hematoma." (Wachtel Decl. ¶ 6(k).) Plaintiff argues that Dr. Wachtel "leaves out important material facts" and "does not testify to truth" for fraudulent purposes because, "Dr. Wachtel, is employed [sic] by the defense and predispositioned [sic] to 'actual bias' to decide a cause or issue in a certain way. There for [sic] Dr. Wachtel, 'lacks the ability to remain objective' and exercise his functions impartially in a particular case, and that is a huge disqualifying factor. Dr. Wachtel is nothing more than a hired gun for the defense."[14] (Pl. Opp'n at 15, ECF No. 134.)

Here, it is undisputed that Dr. Peck's consultation note states, "[Plaintiff's] hematocrit stable in his vital signs are stable." (DUdF j; Pl. Opp'n, G2.) Dr. Peck's assessment was based upon his review of the clinical tests and physical examination of Plaintiff. (Wachtel Decl., Ex. B; Thelen Decl., Exs. C-G.) Dr. Wachtel's declaration and interpretation is consistent with Dr. Peck's notations, and there is no evidence to the contrary. Plaintiff simply misinterprets Dr. Peck's shorthand "hematocrit stable" or ("HCT stable), which communicated (and consistent with his typed notes) that Plaintiff was not actively bleeding, as a patient with an active bleed would not have a stable hematocrit level. (DUdF j; Wachtel Decl. ¶¶ 6(f), 6(j).)

Plaintiff also contests the medical records which indicate that following the right thoracotomy and evacuation of his extrapleural hematoma, he was taken to the ICU in stable condition with subsequent imaging studies showing no sign of the previously present hematoma. Plaintiff argues that

---

[14] Plaintiff's argument that Dr. Wachtel is biased goes to the weight and credibility of his testimony, not whether it is admissible. In re Unisys Sav. Plan Litig., 173 F.3d 145, 166 n.11 (3d Cir. 1999) (expert witnesses cannot be excluded solely on the basis of bias.).

"stable is not a science, but an individual perspective."  (Pl. Opp'n at 12, ECF No. 134.)  However, the opinions by medical doctors, including Dr. Peck, Dr. Ahmed, and Dr. Wachtel, are based on their professional qualifications, and there is no evidence that Dr. Peck was not wholly qualified to opine that Plaintiff was hematocrit stable.  Plaintiff also argues that, "All Dr. Wachtel declares is medical probabilities, which by definition is only a likelyhood [sic], something that could be or might not be." (Pl. Opp'n at 86, ECF No. 134.)  However, Dr. Wachtel's opinions are based on a medical probability which is different than medical possibility for purposes of causation.  See, e.g., Bromme v. Pavitt, 5 Cal.App.4th 1487, 1498 (1992) ("[t]hat there is a distinction between a reasonable medical 'probability' and a medical 'possibility' needs little discussion. There can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury. [Citation.]") (citations omitted); Jones v. Ortho Pharmaceutical Corp., 163 Cal.App.3d 396, 402-03 (2d Dist. 1985) (with regard to causation, plaintiff must prove within a reasonable medical probability based on competent medical testimony that defendant's negligent care caused his injury); Wilson v. California Dept. of Corrections, No. 2:02-cv-2169 MCE KJM P, 2006 WL 707434, at *5 (E.D. Cal. Mar. 21, 2006) (same).  As stated above, Dr. Wachtel's expert testimony is admissible and may be considered in ruling on Defendant's motion. the Court cannot ignore his opinions.  See Primiano v. Cook, 598 F.3d at 567 (admitting expert's testimony with "sufficient basis in education and experience").

Drawing all reasonable inferences from the evidence submitted in Plaintiff's favor, the Court concludes that Plaintiff has not submitted sufficient evidence at the summary judgment stage to create a genuine issue of material fact with respect to his claim that Defendant Dr. Ahmed violated his rights under the Eighth Amendment.  Because Plaintiff lacks the foundation or qualifications to draw such conclusions based on the medical notes and records during his visits with Dr. Ahmed, his claims that certain medical treatment was improper is at best speculation.  The record does not support an inference that the course of treatment Dr. Ahmed chose was medically unacceptable under the circumstances and amounted to deliberate indifference.  Plaintiff has not submitted any evidence to

cast doubt on Defendant Dr. Wachtel's unrefuted expert testimony which establishes that the medical care and treatment that was rendered to Plaintiff by Dr. Ahmed was medically appropriate under the circumstances and within the standard of care and skill ordinarily exercised by reputable members of the medical profession at that time.  Further, there is nothing that Dr. Ahmed either did or did not do that, to a reasonable degree of medical probability, was a substantial factor in causing harm or injury to Plaintiff.  (Wachtel Decl. ¶ 8.)  Accordingly, there is no evidence from a which a trier of fact could conclude that Dr. Ahmed not only purposefully failed to treat plaintiff, but also that he was harmed by their indifference.  Consequently, Defendant's motion for summary judgment should be granted.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment be granted; and
2. Judgment be entered in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **June 16, 2021**

UNITED STATES MAGISTRATE JUDGE