1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **EASTERN DISTRICT OF CALIFORNIA**

10

11    DENNIS CURTIS HISLE,                    )    Case No. 1:17-cv-01400-NONE-SAB (PC)
                                              )
12                     Plaintiff,             )
                                              )    **FINDINGS AND RECOMMENDATIONS**
13           v.                               )    **REGARDING PLAINTIFF'S AND DEFENDANT**
                                              )    **CONANAN'S MOTIONS FOR SUMMARY**
14    MARLYN CONANAN, et al.,                 )    **JUDGMENT**
                                              )
15                     Defendants.            )    (ECF Nos. 122, 138)
                                              )
16    _____        )

17           Plaintiff Dennis Curtis Hisle is appearing *pro se* and *in forma pauperis* in this civil rights

18    action pursuant to 42 U.S.C. § 1983.

19           Currently before the Court is Plaintiff's motion for summary judgment, filed on August 6,

20    2020, and Defendant Conanan's motion for summary judgment, filed on November 10, 2020.  (ECF

21    Nos. 127, 128.)

22                                            **I.**

23                                  **RELEVANT BACKGROUND**

24           This action is proceeding against Defendants Conanan and Ahmed for deliberate indifference

25    to a serious medical need in violation of the Eighth Amendment.

26           On April 10, 2018, Defendant Conanan filed an answer to the complaint.  (ECF No. 18.)  On

27    April 11, 2018, the Court issued the discovery and scheduling order.  (ECF No. 19.)

28           On June 17, 2019, Defendant Conanan filed a motion for summary judgment.  (ECF No. 68.)

On October 31, 2019, the undersigned issued Findings and Recommendations recommending that Defendant Conanan's motion for summary judgment be denied.  (ECF No. 92.)

On December 18, 2019, the Findings and Recommendations were adopted in full.  (ECF No. 97.)

On March 2, 2020, Defendant Conanan filed a motion for summary judgment for failure to exhaust the administrative remedies.  (ECF No. 107.)

On April 13, 2020, Plaintiff filed a third amended complaint.  (ECF No. 114.)

On April 28, 2020, Defendant Conanan filed an answer to the second amended complaint. (ECF No. 118.)

On August 3, 2020, the undersigned issued Findings and Recommendations recommending that Defendant Conanan's motion for summary judgment for failure to exhaust the administrative remedies be granted.  (ECF No. 121.)  The Findings and Recommendations were adopted in full on November 6, 2020.  (ECF No. 136.)

On August 6, 2020, Plaintiff filed a motion for summary judgment as to Defendant Conanan. (ECF No. 122.)

On November 10, 2020, Defendant Conanan filed a motion for summary judgment.  (ECF No. 138.)

On December 28, 2020, Plaintiff filed an opposition to Defendant Conanan's motion for summary judgment.  (ECF No. 148.)

On February 5, 2021, Defendant Conanan filed an opposition to Plaintiff's motion for summary judgment, and a reply to Plaintiff's opposition.  (ECF Nos. 153, 154.)

On March 1, 2021, Plaintiff filed a reply to Defendant Conanan's opposition to his motion for summary judgment.  (ECF Nos. 155, 156.)

## II.

### LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

2

judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  Tulalip Tribes of Washington v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015); Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).  A cross-motion for summary judgment requires the court to apply the same standard and rule on each motion independently. Creech v. N.D.T. Indus., Inc., 815 F. Supp. 165, 166–67 (D.S.C. 1993). When both parties have moved for summary judgment, "[t]he granting of one motion does not necessarily warrant the denial of the other motion, unless the parties base their motions on the same legal theories and same set of material facts." Stewart v. Dollar Fed. Sav. & Loan Ass'n, 523 F. Supp. 218, 220 (S.D. Ohio 1981) (citing Schlytter v. Baker, 580 F.2d 848, 849 (5th Cir. 1978)).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes

entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d at 942 (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.     Summary of Plaintiff's Allegations**

On April 29, 2016, Plaintiff suffered three broken ribs that went undiagnosed by CRMC hospital.  Upon telling Dr. Conanan at the prison medical unit of his pain and not be able to breath correctly for five days, simply sent Plaintiff back to his cell.  After repeated requests for assistance, Dr. Conanan concedes to an x-ray that uncovers three broken ribs and internal bleeding.  Conanan simply sends Plaintiff back to his cell with internally bleeding and pneumonia, after three weeks. Later, an x-ray reveals a large pleural hematoma and strained breathing.  X-ray technician Quincy tried to assist Plaintiff by telling his superiors of Plaintiff's serious state and Plaintiff was again sent back to his cell.  Days later, Plaintiff was rushed to the hospital where Conanan allowed him to lay two weeks until his lung collapsed before transfer for surgery at Memorial Hospital.

**B.     Plaintiff's Motion for Summary Judgment**

The Court initially denied summary judgment on the merits of Plaintiff's Eighth Amendment claim because it found that Plaintiff raised a triable issue of act as to whether Defendant Conanan provided a medical lay-in for Plaintiff on May 5, 2016, whether Conanan made an urgent request for Plaintiff to see an outside pulmonologist, and whether Dr. Conanan fraudulently misrepresented Plaintiff's course of treatment in her progress notes.  (ECF No. 92.)  Defendant Conanan thereafter moved for summary judgment and argued that Plaintiff never exhausted his administrative remedies for these specific allegations as required by the Prison Litigation Reform Act.  (ECF No. 107.)  The

Court agreed and dismissed these allegations because Plaintiff failed to exhaust the administrative remedies.  (ECF No. 136.)  Thus, the solely issue is whether Defendant Conanan was deliberately indifferent by failing to provide *any treatment* for Plaintiff's fractured ribs.

Plaintiff moves summary judgment and contends his motion "entails evidence and sworn declarations by the [D]efendant Marlyn Conanan, that in her professional judgment prior to May 19, 2016, she believed [Plaintiff's] injuries could be managed with pain medications, rest, and activity modification.  But Dr. Conanan failed to provide what she herself professionally judged medically plaintiff needed to recover 1) the ability to rest, 2) activity modification (lay-in order).  So it is by Dr. Conanan's own sworn testimony that allows plaintiff to make a case for deliberate indifference and not be disqualified based on difference as to medical opinion."  (ECF No. 122, Mot. at 39-40.)[1]

In opposition, Defendant Conanan argues Plaintiff's motion fails because 1) he re-raises claims previously dismissed as unexhausted, thereby violating the law of the case doctrine; 2) he cannot generate a genuine issue of material fact that he had pneumonia because the medical records so thoroughly undermine his unqualified interpretation of the undisputed medical records that no juror could believe him; and 3) the undisputed evidence shows that Dr. Conanan was not deliberately indifferent because she treated Plaintiff's rib fractures.  (ECF No. 153 at 12.)

   1. <u>Statement of Undisputed Facts</u>[2]

   a. Marlyn Conanan, was primary care provider to plaintiff Hisle and treated his rib fractures while at Pleasant Valley State Prison on May 2, 2016, until his transfer to Mercy Hospital.

   b. Marlyn Conanan states Plaintiff Hisle did not have pneumonia when she treated him.

   c. Marlyn Conanan states Plaintiff did not have a collapsed lunch (atelectasis) while under her care.

   d. Dr. Schultz did not note no collapsed lung or atelectasis.  Dr. Shultz only notes no pneumothorax.

   e. The May 20, 2015 radiology report states that Plaintiff had mild atelectasis.

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] Hereinafter "PUdF."

1        f.      "Lay-ins are provided to sick or injured inmates who would benefit from time to rest

2  and recover, and the form serves to excuse them from work or school.  (Feinberg Decl. ¶ 9.)

3        g.      Dr. Conanan's May 12, 2016 progress note observed that Plaintiff was functional on

4  the yard.

5        h.      Dr. Conanan declares that she filled out a request for service on May 19, 2016 for

6  Plaintiff to see a pulmonologist.  (Conanan Decl. ¶ 10, Ex. H.)

7        2.    <u>Analysis of Plaintiff's Motion</u>

8        While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical

9  care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to

10  an inmate's serious medical needs.  <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled

11  in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v.</u>

12  <u>Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006).

13  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition

14  could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that

15  "the defendant's response to the need was deliberately indifferent."  <u>Wilhelm</u>, 680 F.3d at 1122 (citing

16  <u>Jett</u>, 439 F.3d at 1096).   The requisite state of mind is one of subjective recklessness, which entails

17  more than ordinary lack of due care.  <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted);

18  <u>Wilhelm</u>, 680 F.3d at 1122.

19        "A difference of opinion between a physician and the prisoner – or between medical

20  professionals – concerning what medical care is appropriate does not amount to deliberate

21  indifference."  <u>Snow</u>, 681 F.3d at 987 (citing <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989),

22  overruled in part on other grounds, <u>Peralta</u>, 744 F.3d at 1082-83; <u>Wilhelm</u>, 680 F.3d at 1122-23 (citing

23  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1986).  Rather, Plaintiff "must show that the course of

24  treatment the doctors chose was medically unacceptable under the circumstances and that the

25  defendants chose this course in conscious disregard of an excessive risk to [his] health."  <u>Snow</u>, 681

26  F.3d at 988 (citing <u>Jackson</u>, 90 F.3d at 332) (internal quotation marks omitted).  ).  In addition,

27  "[m]edical malpractice does not become a constitutional violation merely because the victim is a

28

prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1977); Snow v. McDaniel, 681 F.3d at 987-88, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122.

Here, Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law.  As an initial matter, the Court previously dismissed Plaintiff's claims that Defendant Conanan failed to offer a lay-in, failed to provide an urgent referral to a pulmonologist, and alleged falsification of medical records.  (ECF No. 136.)  Under the law of the doctrine, district courts are "generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case."  United States v. Alexander, 106 F.3d 874, 876-77 (9th Cir. 1997).  Plaintiff cannot now attempt to move for summary judgment on Conanan's alleged failure to provide a lay-in and false misrepresentation to argue she was deliberately indifferent to his serious medical needs.  Id.

It is undisputed that Defendant Conanan, was primary care provider to plaintiff Hisle and treated his rib fractures while at Pleasant Valley State Prison on May 2, 2016, until his transfer to Mercy Hospital. (PUdF a.)  Defendant Conanan states Plaintiff Hisle did not have pneumonia when she treated him.   (PUdF b.)  Defendant Conanan states Plaintiff did not have a collapsed lunch (atelectasis) while under her care.  (PUdF c.)  Dr. Schultz did not note no collapsed lung or atelectasis. Dr. Shultz only notes no pneumothorax.  (PUdF d.)  The May 20, 2015 radiology report states that Plaintiff had mild atelectasis. (PUdF e.)  "Lay-ins are provided to sick or injured inmates who would benefit from time to rest and recover, and the form serves to excuse them from work or school.  (PUdF f.)  Dr. Conanan's May 12, 2016 progress note observed that Plaintiff was functional on the yard.  (PUdF g.)  Defendant Conanan declares that she filled out a request for service on May 19, 2016 for Plaintiff to see a pulmonologist.  (PUdF h.)

Plaintiff contends that he had pneumonia and Defendant Conanan failed to provide treatment for it.  (ECCF No. 122 at 4, 8.)  However, Defendant submits evidence of Plaintiff's medical records which contradict Plaintiff's contention that he had pneumonia.  (Conanan Decl. ¶¶ 4-6, 8, 9, 10, Exs. C, D, G, H; Pl.'s Dep. at 43-46, 48:7-10, 15-25; 49:1-5, 52:8-25, 54, 55, 58-59, 61-62; Feinberg Decl. 10-12, 14, 16, 17, 18, 27, Exs. B, C.)  In addition, Plaintiff cannot provide his layperson opinion to interpret his medical records.  Fed. R. Evid. 701; see also United States v. Conn, 297 F.3d 548, 554

7

1  (7th Cir. 2002) (quoting United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001) ); Hanger

2  Prosthetics & Orthopedics, Inc. v. Capstone, Orthopedic, Inc., No. 2:06-cv-02879-GEB-KJM, 2008

3  WL 2441067, at *2 (E.D. Cal. June 13, 2008) ("The distinction between lay and expert witness

4  testimony is that lay testimony results from a process of reasoning familiar in everyday life, while

5  expert testimony results from a process of reasoning which can be mastered only by specialists in the

6  field.") (internal punctuation and citations omitted).  Furthermore, Defendant Conanan has presented

7  expert testimony that she was not deliberately indifferent to Plaintiff's medical needs during this

8  period of time.  (Feinberg Decl., ECF No. 153-3.)

9       In deciding a motion for summary judgment, a court may not resolve conflicting evidence.

10  Soremekun v. Thrifty Payless, Inc., 509 F.3d at 984. Rather, summary judgment may be granted only

11  when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

12  of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 US 242, 248 (1986).  Plaintiff has

13  failed to carry his initial burden of demonstrating that summary judgment is proper and that no

14  reasonable trier of fact could find other than for him.

15       Defendant has presented expert testimony by Dr. Feinberg who opines that Defendant Dr.

16  Conanan was not deliberately indifferent to Plaintiff's medical needs at any time. (Feinberg Decl. ¶

17  17.)  Although Plaintiff disputes whether Defendant Dr. Conanan's care and treatment was

18  deliberately indifferent, Defendant's evidence creates a genuine dispute of material fact regarding

19  whether Defendant acted reasonably in treating Plaintiff which precludes the grant of summary

20  judgment in favor of Plaintiff.  Based on the evidence presented, Plaintiff has failed to demonstrate, as

21  a matter of law, that there is no triable issue of material fact as to whether or not Defendant Conanan.

22  was deliberately indifference to a serious medical for Plaintiff.  Accordingly, Plaintiff's motion for

23  summary judgment as a matter of law must be denied.

24     **B.     Defendant Conanan's Motion for Summary Judgment**

25       Defendant Conanan moves for summary judgment on Plaintiff's deliberate indifference claim

26  because the undisputed evidence shows that she regularly monitored Plaintiff's rib fractures,

27  prescribed pain management medications, and activity modifications.

28

8

1.      Statement of Undisputed Facts[3]

a.      Plaintiff was an inmate at Pleasant Valley State Prison. On October 17, 2017, Plaintiff filed the complaint and alleged that Dr. Conanan was deliberately indifferent to Plaintiff's rib fractures.  (Pl.'s Compl.)

b.      Plaintiff has no medical degrees and is not a medical expert.  (Pl.'s Dep. at 11:11-19; 56:11-14; 85:10-13.)

c.      Plaintiff had to be taken to Community Regional Medical Center ("CRMC") due to an incident in which staff found Plaintiff unconscious in the dayroom on April 28, 2016.  (Conanan Decl. ¶ 3, Ex. A (ECF No. 138-3); Pl.'s Dep. at 28:15-21; Feinberg Decl. ¶ 9, Ex. B (ECF No. 138-4).)

d.      While at CRMC, Plaintiff had a CT scan of his chest, and abdominal area and was determined to be clinically stable.  (Id.)

e.      The testing conducted on Plaintiff at Community Regional Medical Center did not detect any broken ribs.[4]  (Conanan Decl. ¶ 3, Ex. A; Pl.'s Dep. at 30:19-23.)

f.      No one at Community Regional Medical Center had diagnosed Plaintiff with broken ribs.  (Id.; Pl.'s Dep. at 30-31.)

g.      Plaintiff received a lay-in where he was confined to quarters for four days after his return from Community Regional Medical Center on or about April 29, 2016.  (Pl.'s Dep. at 36:25; 37:1-12.)

h.      Plaintiff met with Defendant Conanan on May 2, 2016 so that she could review his treatment at Community Regional Medical Center.  Dr. Conanan told Plaintiff that his testing at CRMC indicated normal results.  Plaintiff complained of pain in his right chest area below his rib cage.  For this reason, Dr. Conanan requested that Plaintiff receive a chest x-ray.  (Conanan Decl. ¶ 4; Pl.'s Dep. at 42-46; Feinberg Decl. ¶ 10, Ex. B.)

i.      On May 4, 2016, Plaintiff received a chest x-ray, which was interpreted by Dr. C.

---

[3] Hereinafter "DUdF."

[4] Plaintiff cannot attempt to dispute this statement of fact by way of his lay opinion and interpretation of the medical notes. Fed. R. Evid. 701.

Shultz, M.D. to show rib fractures at the seventh, eighth, and ninth posterior ribs.  There was also no visible pneumothorax or collapsed lung, and there was a small, right pleural effusion or hemothorax present.  These images were new and not visualized on the CT scan taken of Plaintiff at CRMC.[5] (Conanan Decl. ¶ 5, Ex. C; Pl.'s Dep. at 48:15-25; 49:1-5; Feinberg Decl. ¶ 11.)

j.      On May 5, 2016, Dr. Conanan had a follow-up appointment with Plaintiff to review the results of his May 4, 2016 x-ray.  Dr. Conanan prescribed critical pain medications, and scheduled Plaintiff for a follow-up appointment on May 12, 2016 to check the status of Plaintiff's rib fractures.  (Conanan Decl. ¶ 6, Ex. D; Pl.'s Dep. at 48:7-10; 52:8-25; 54; 55; 58-59; 61-62; Ex. 5; Feinberg Decl. ¶ 12.)

k.      Dr. Conanan believed that Plaintiff's injuries could be treated with regular monitoring, activity modification, rest, and pain management with pain medications.  Dr. Conanan did not believe Plaintiff required urgent hospitalization.  (Conanan Decl. ¶ 12; Feinberg Decl. ¶ 27.)

l.      Rib fractures heal on their own, and are treated supportively with pain medications and the tincture of time.[6]  (Feinberg Decl. ¶ 27.)

m.      Small collections of fluid in the pleural space can be expected to reabsorb on their own and are best managed with observation over time to confirm resolution.[7]  (Feinberg Decl. ¶ 27.)

n.      An invasive procedure to remove small collections of pleural fluid is more likely to lead to complications such as pneumothorax or an infection than it is to provide a benefit, especially in a patient without evidence of respiratory compromise such as Plaintiff, who was oxygenating normally, and had no shortness of breath.[8]  (Feinberg Decl. ¶ 27.)

o.      Plaintiff was specifically advised how to request an early appointment if he felt it was

---

[5] Plaintiff cannot attempt to dispute this statement of fact by way of his lay opinion and interpretation of the medical notes.  Fed. R. Evid. 701.

[6] Plaintiff's assertions are beyond the scope of this statement.

[7] Plaintiff cannot offer his own medical opinion because Plaintiff as a layperson not qualified to give an expert medical opinion regarding rib fractures.  Fed. R. Evid. 701.

[8] Plaintiff cannot dispute this statement by offering his own interpretation of the medical records.  Fed. R. Civ. 701.

necessary, but he submitted no requests or complaints to Dr. Conanan for uncontrolled pain difficulty breathing, or any reason.[9]  (Feinberg Decl. ¶ 27.)

        p.      On May 9, 2016, Plaintiff refused to take Tylenol No. 3 against medical advice and signed a "refusal of examination or treatment" form stating that he had refused the medications after being advised of the risks associated with refusing to take the medications.  (Conanan Decl. ¶ 7, Ex. E; Pl.'s Dep. at 66:10-20; 67:18-25; 68:7-25; 69; Feinberg Decl. ¶ 13.)

        q.      Dr. Feinberg opines that Plaintiff's refusal to take pain medications "in order to check his level of pain off of medication" is not consistent with someone experiencing excruciating pain, but rather, someone whose pain was well-controlled on current medications and trying to determine whether or not they were needed.  (Feinberg Decl. ¶ 27.)

        r.      On May 12, 2016, Plaintiff saw Dr. Conanan again.  Plaintiff again complained of pain to his lower right chest area and had pain when he breathed deeply.  Dr. Conanan ordered another x-ray of Plaintiff and told Plaintiff to take his prescribed pain medications.  Dr. Conanan scheduled another follow-up appointment with Plaintiff for May 19, 2016.[10]  (Conanan Decl. ¶ 8, Ex. F; Pl's Dep. at 61:20-25; 62:11-22; 63:8-18; 65:17-25; 66:1-9; Feinberg Decl. ¶¶ 14, 27.)

        s.      Given Plaintiff's new occasional cough, mucus and slight wheezing demonstrated at Plaintiff's May 12, 2016 appointment with Dr. Conanan, Dr. Conanan prescribed antibiotics for a possible upper respiratory infection, renewed Plaintiff's pain medications, and requested a repeat chest x-ray.  (Conanan Decl. ¶ 8, Ex. F; Feinberg Decl. ¶ 14, Ex. B; Pl.'s Dep. at 59:9-13.)

        t.      On May 16, 2016, Plaintiff had another x-ray.  Dr. Schultz interpreted that x-ray and visualized a large opacity that appeared over Plaintiff's right lung.  This finding was new and had not appeared on any previous x-ray.[11]  (Conanan Decl. ¶ 9, Ex. G; Feinberg Decl. ¶ 15.)

        u.      Technician Richard operated the x-ray imaging equipment for Plaintiff on May 16,

---

[9] Plaintiff's assertions are beyond the scope of this statement.

[10] Plaintiff's assertions are beyond the scope of this statement.

[11] Plaintiff cannot dispute this statement by offering his own interpretation of the medical records.  Fed. R. Civ. 701.

2016.  He made no diagnosis or interpretation of this x-ray and did not recommend to Dr. Conanan or any doctor that Plaintiff needed urgent hospitalization.  Technician Richard does not have the training, knowledge, or experience to interpret x-ray film and diagnose medical conditions.  (Richard Decl. ¶ 2.)

       v.    On May 19, 2016, Dr. Conanan had a follow-up appointment with Plaintiff to discuss the findings from Plaintiff's May 16, 2016 x-ray.  Dr. Conanan's medical process notes indicate that she decided, based on the fact that there was an opacity visualized on the May 16, 2016 x-ray, to make an urgent request for Plaintiff to see a pulmonologist.  (Conanan Decl. ¶ 10 Ex. H ; Pl.'s Dep. at 80:18-23.)

       w.    Plaintiff was transferred to an outside hospital on May 20, 2019.  Dr. Conanan completed a "routine" request for a thoracotomy, which was an evacuation of an extra pleural hematoma on June 2, 2016.  Dr. Conanan believed Plaintiff needed a higher level of care.[12]  (Conanan Decl. ¶ 11; Feinberg Decl. ¶¶ 16-17.)

       x.    Plaintiff has no personal knowledge of who made the decision to transfer him to an outside hospital for further treatment. (Pl.'s Dep. at 94:21-25; 95:1-25; 97:6-9.)

       y.    Plaintiff saw Dr. George at the TTA on May 20, 2016, and Plaintiff was transferred by car to Mercy Hospital in order to rule out pneumonia.[13]  (Feinberg Decl. ¶ 17.)

       z.    Plaintiff was hospitalized at Mercy Hospital in Bakersfield, California from May 20, 2016 until May 31, 2015.  A large right sided pleural hematoma was found on the imaging studies and a CT guided aspiration was performed by interventional radiologist Dr. David Condie.  (Feinberg `1`Decl. ¶ 18.)

       aa.    Dr. Mustaq Ahmed, the hospitalist overseeing Plaintiff's medical care at Mercy Hospital, elected to pursue surgical evacuation of the hematoma, and the surgery required Plaintiff to be transferred to Memorial Hospital in Bakersfield.  (Feinberg Decl. ¶ 18.)

       bb.    Plaintiff stayed at Memorial Hospital from May 31, 2016 until June 7, 2016.  (Feinberg

---

[12] Plaintiff's assertions are beyond the scope of this statement.

[13] Plaintiff cannot dispute this statement by offering his own interpretation of the medical records.  Fed. R. Civ. 701.

Decl. ¶ 19.)

cc.    Thoracic surgeon Dr. Peck consulted with Plaintiff on June 1, 2016, and recommended a surgical evaluation of the hematoma and discussed with Plaintiff the benefits and alternatives to Plaintiff who agree to proceed with the surgery.  (Feinberg Decl. ¶ 19.)

dd.   On June 3, 2016, Dr. Peck performed a right thoracotomy and evacuation of the extrapleural hematoma.  There were no complications with the surgery, and Plaintiff was discharged on June 7, 2016.  (Feinberg Decl. ¶ 20.)

ee.    Plaintiff saw Dr. De La Sierra at Pleasant Valley State Prison for follow-up.  He stayed in the Correctional Treatment Center for the remainder of the month where Dr. De La Sierra saw him every other day and noted his continued good recovery from the surgery.  (Feinberg Decl. ¶ 21.)

ff.    Plaintiff believes he experiences asthma; however Plaintiff's asthma is not secondary to surgery.  (Feinberg Decl. ¶ 28; Pl.'s Dep. at 111:1-25.)

2.    Analysis of Defendant's Motion

As previously stated, while the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d at 985; Wilhelm v. Rotman, 680 F.3d at 1122; Jett v. Penner, 439 F.3d at 1096.  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference."  Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d at 242), overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d at 332.  Rather, Plaintiff "must show that the course of treatment the doctors chose

13

1   was medically unacceptable under the circumstances and that the defendants chose this course in

2   conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90

3   F.3d at 332) (internal quotation marks omitted).  ).  In addition, "[m]edical malpractice does not

4   become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429

5   U.S. at 106; Snow v. McDaniel, 681 F.3d at 987-88, overruled in part on other grounds, Peralta v.

6   Dillard, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122.

7        Here is it undisputed that Plaintiff met with Defendant Conanan on May 2, 2016 so that she

8   could review his treatment at Community Regional Medical Center.  Dr. Conanan told Plaintiff that

9   his testing at CRMC indicated normal results.  Plaintiff complained of pain in his right chest area

10  below his rib cage.  For this reason, Dr. Conanan requested that Plaintiff receive a chest x-ray.  (DUdF

11  h.)  On May 4, 2016, Plaintiff received a chest x-ray, which was interpreted by Dr. C. Shultz, M.D. to

12  show rib fractures at the seventh, eighth, and ninth posterior ribs.  There was also no visible

13  pneumothorax or collapsed lung, and there was a small, right pleural effusion or hemothorax present.

14  These images were new and not visualized on the CT scan taken of Plaintiff at CRMC.  (DUdF i.)

15       On May 5, 2016, Dr. Conanan had a follow-up appointment with Plaintiff to review the

16  results of his May 4, 2016 x-ray.  Dr. Conanan prescribed critical pain medications, and scheduled

17  Plaintiff for a follow-up appointment on May 12, 2016 to check the status of Plaintiff's rib fractures.

18  (DUdF j.)  Dr. Conanan believed that Plaintiff's injuries could be treated with regular monitoring,

19  activity modification, rest, and pain management with pain medications.  Dr. Conanan did not believe

20  Plaintiff required urgent hospitalization.  (DUdF k.)  Rib fractures heal on their own, and are treated

21  supportively with pain medications and the tincture of time.  (DUdF l.)  Small collections of fluid in

22  the pleural space can be expected to reabsorb on their own and are best managed with observation

23  over time to confirm resolution.  (DUdF m.) An invasive procedure to remove small collections of

24  pleural fluid is more likely to lead to complications such as pneumothorax or an infection than it is to

25  provide a benefit, especially in a patient without evidence of respiratory compromise such as Plaintiff,

26  who was oxygenating normally, and had no shortness of breath.  (DUdF n.)  Plaintiff was specifically

27  advised how to request an early appointment if he felt it was necessary, but he submitted no requests

28  or complaints to Dr. Conanan for uncontrolled pain difficulty breathing, or any reason.  (DUdF o.)

On May 9, 2016, Plaintiff refused to take Tylenol No. 3 against medical advice and signed a "refusal of examination or treatment" form stating that he had refused the medications after being advised of the risks associated with refusing to take the medications.  (DUdF p.)  Dr. Feinberg opines that Plaintiff's refusal to take pain medications "in order to check his level of pain off of medication" is not consistent with someone experiencing excruciating pain, but rather, someone whose pain was well-controlled on current medications and trying to determine whether or not they were needed.  (DUdF q.)

On May 12, 2016, Plaintiff saw Dr. Conanan again.  Plaintiff again complained of pain to his lower right chest area and had pain when he breathed deeply.  Dr. Conanan ordered another x-ray of Plaintiff and told Plaintiff to take his prescribed pain medications.  Dr. Conanan scheduled another follow-up appointment with Plaintiff for May 19, 2016. (DUdF r.) Given Plaintiff's new occasional cough, mucus and slight wheezing demonstrated at Plaintiff's May 12, 2016 appointment with Dr. Conanan, Dr. Conanan prescribed antibiotics for a possible upper respiratory infection, renewed Plaintiff's pain medications, and requested a repeat chest x-ray.  (DUdF s.)

On May 16, 2016, Plaintiff had another x-ray.  Dr. Schultz interpreted that x-ray and visualized a large opacity that appeared over Plaintiff's right lung.  This finding was new and had not appeared on any previous x-ray.  (DUdF t.) Technician Richard operated the x-ray imaging equipment for Plaintiff on May 16, 2016.  He made no diagnosis or interpretation of this x-ray and did not recommend to Dr. Conanan or any doctor that Plaintiff needed urgent hospitalization.  Technician Richard does not have the training, knowledge, or experience to interpret x-ray film and diagnose medical conditions.  (DUdF u.)

On May 19, 2016, Dr. Conanan had a follow-up appointment with Plaintiff to discuss the findings from Plaintiff's May 16, 2016 x-ray.  Dr. Conanan's medical process notes indicates that she decided, based on the fact that there was an opacity visualized on the May 16, 2016 x-ray, to make an urgent request for Plaintiff to see a pulmonologist.  (DUdF v.)

Plaintiff was transferred to an outside hospital on May 20, 2019.  Dr. Conanan completed a "routine" request for a thoracotomy, which was an evacuation of an extra pleural hematoma on June 2, 2016.  Dr. Conanan believed Plaintiff needed a higher level of care.  (DUdF w.)

15

Plaintiff has no personal knowledge of who made the decision to transfer him to an outside hospital for further treatment. (DUdF x.)  Plaintiff saw Dr. George at the TTA on May 20, 2016, and Plaintiff was transferred by car to Mercy Hospital in order to rule out pneumonia.  (DUdF y.)

Plaintiff was hospitalized at Mercy Hospital in Bakersfield, California from May 20, 2016 until May 31, 2015.  A large right sided pleural hematoma was found on the imaging studies and a CT guided aspiration was performed by interventional radiologist Dr. David Condie.  (DUdF z.)

Dr. Mustaq Ahmed, the hospitalist overseeing Plaintiff's medical care at Mercy Hospital, elected to pursue surgical evacuation of the hematoma, and the surgery required Plaintiff to be transferred to Memorial Hospital in Bakersfield.  (DUdF aa.)  Plaintiff stayed at Memorial Hospital from May 31, 2016 until June 7, 2016.  (DUdF bb.)

Thoracic surgeon Dr. Peck consulted with Plaintiff on June 1, 2016, and recommended a surgical evaluation of the hematoma and discussed with Plaintiff the benefits and alternatives to Plaintiff who agree to proceed with the surgery.  (DUdF cc.)  On June 3, 2016, Dr. Peck performed a right thoracotomy and evacuation of the extrapleural hematoma.  There were no complications with the surgery, and Plaintiff was discharged on June 7, 2016.  (DUdF dd.)

Plaintiff saw Dr. De La Sierra at Pleasant Valley State Prison for follow-up.  He stayed in the Correctional Treatment Center for the remainder of the month where Dr. De La Sierra saw him every other day and noted his continued good recovery from the surgery.  (DUdF ee.)  Plaintiff believes he experiences asthma; however Plaintiff's asthma is not secondary to surgery.  (DUdF ff.)

Defendant submits expert testimony by Dr. Bennett Feinberg in support of her motion.  Dr. Feinberg graduated from the University of California at San Francisco School of Medicine in 1994. (Feinberg Decl. ¶ 2.)  He completed his internship and residency in Internal Medicine at the Baylor College of Medicine in Houston, Texas in 1997.  (Id.)  He is Board certified in Internal Medicine and has been licensed to practice medicine in the State of California since 1997, with over 20 years of experience.  (Id.)  Dr. Feinberg is currently employed by the California Correctional Health Care Services (CCHCS) and serves as the Chief Medical Consultant for the CCHCS Office of Legal Affairs.  (Id. ¶ 3.)  Prior to his current position, Dr. Feinberg served as a full-time primary care

physician in two California prisons from January 2010 to January 2017.  (Id.)  Prior to employment at CCHCS, he served as a physician leader and staff physician at Kaiser Permanente for twelve years. There, he supervised a module of ten physician while also providing the full range of primary care services to his own adult patients with significant chronic conditions.  (Id.)

The Court finds that Dr. Feinberg may opine on the evaluation, care, and treatment of Plaintiff rendered by Dr. Conanan.[14]  Dr. Feinberg possesses knowledge of the standard of professional learning, skill, and care required of a physician in the fields of internal medicine and based upon his education, training, experience and qualifications, he is thoroughly familiar with the degree of learning and skill ordinarily possessed by reputable medical doctors in those fields in the State of California, including the area in which Plaintiff was treated by Dr. Conanan.  In addition, Dr. Feinberg is qualified to testify as to whether Defendant caused Plaintiff's alleged injuries.  See, e.g., Brown v. Pac. Gas & Elec. Co., Case No. EDCV 16-0654 DMG (KKx), 2018 WL 5270494, at *7 (C.D. Cal. June 25, 2018) (citing Sanderson v. Int'l Flavors & Fragrances, Inc., 950 F. Supp. 981, 1003 (C.D. Cal. 1996)).  In sum, the Court finds that Dr. Feinberg's declaration is admissible as to whether the care rendered by Dr. Conanan breached the standard of care. Further, the Court concludes that Dr. Feinberg is qualified to testify as to whether Dr. Conanan's care caused Plaintiff harm.  Trujillo v. Cty. of Los Angeles, 751 F.App'x 968, 970-71 (9th Cir. 2018) ("Expert witnesses may offer opinions on matters

---

[14] Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); see also Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004).  Rule 702 "contemplates a broad conception of expert qualifications." Hangarter, 373 F.3d at 1018 (emphasis in original). Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000); see also Fed. R. Evid. 702.  Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010). To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." Id. at 564.

1   of which they do not have firsthand knowledge so long as it is permissible in their discipline.") (citing

2   Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592  ("[A]n expert is permitted wide latitude to

3   offer opinions, including those that are not based on firsthand knowledge or observation.")).

4        There is no dispute that plaintiff had a serious medical need while under the care of Defendant

5   Conanan. Therefore, there is no genuine issue of material fact as to the first prong of Plaintiff's

6   deliberate indifference claim. The only remaining issue is whether there is a genuine issue of material

7   fact concerning Defendant's failure to respond to Plaintiff's medical need in a manner that caused him

8   harm in violation of the Eighth Amendment. Jett, 439 F.3d at 1096.

9        The undisputed evidence demonstrates that Defendant Conanan quickly responded to Plaintiff's

10  continued complaint of chest pain by requesting an additional chest x-ray on May 2, 2016.  When

11  Conanan discovered that Plaintiff suffered three fractured ribs, she promptly provided pain medication

12  and recommended that Plaintiff rest and modify his activities.  Dr. Conanan also ordered repeat

13  follow-up appointments to track the status of Plaintiff's healing process.  While the x-rays on May 4,

14  2016, showed a small pleural effusion or hemothorax it did not warrant urgent hospitalization.

15  (Feinberg Decl. ¶ 27.)  Dr. Conanan believed the pleural effusion was small and could be reabsorbed

16  into Plaintiff's body without the need for surgery.  (DUdF k.)  Plaintiff cannot opine that Dr. Conanan

17  acted with deliberate indifference by not requesting he be transferred to an outside hospital for further

18  intervention.  Indeed, as Dr. Feinberg declares, such procedures run the risk of causing further

19  complications, such as a collapsed lung, and ribs can heal overtime and with effective pain

20  management.  (DUdF l, m, n.)

21       Defendant continued with the treatment plan by examining Plaintiff on a weekly basis.  (DUdF

22  r, s, v.)  At each visit, Dr. Conanan noted Plaintiff's complaints and physical presented and observed

23  Plaintiff's pulmonary system.  (Id.)  When it appeared that Plaintiff's complaints of pain increased, Dr.

24  Conanan ordered a second x-ray for further observation.  (DUdF s.)  When the second x-ray revealed

25  an opacity not previously seen on any x-ray, Dr. Conanan believed that a higher level of care was

26  necessary and her medical process notes indicate she requested Plaintiff receive an urgent evaluation.

27  (DUdF v, w.)  The request was granted, and Plaintiff was transferred to Mercy Hospital the very next

28

18

day, and later transferred to Memorial Hospital where Plaintiff received surgical intervention for removal of an extra pleural hematoma.  (DUdF w, y-ee.)

There is no merit to Plaintiff's claim that he had pneumonia when Dr. Conanan saw him and acted with deliberate indifference thereto.  Dr. Conanan examined Plaintiff four times between his return from CRMC and his transfer to Mercy Hospital.  (DUdF h, j, k, r, s, v, w.)  At each appointment, Plaintiff's symptoms did not indicate pneumonia: he did not have a fever or chills and was oxygenating normally.  (Id.)  Plaintiff also had two x-rays in that time, and the radiologist did not interpret any inflammation on Plaintiff's lungs.  (DUdF i, t, u.)  Furthermore, when Dr. George saw Plaintiff in the TTA on May 20, 2016, he had the same symptoms, and Dr. George transferred him to Mercy to rule out the possibility of pneumonia—not because he had pneumonia.  (DUdF y.)  When Plaintiff arrived at Mercy Hospital, Dr. Ahmed did not diagnose him with pneumonia, nor did he have any symptoms consistent with pneumonia.  (DUdF z, aa.)  Thus, Plaintiff was seen by several doctors, and none of them diagnosed him with pneumonia.  Plaintiff erroneously contends that CRMC diagnosed him with "likely pneumonia."  (ECF No. 122 at 33.)  However, the progress note from CRMC states "a differential could include a developing infectious or inflammatory process such as pneumonia.  (Id. at 42, Ex. 1.)  A differential diagnosis is a means of distinguishing a condition from others presenting with similar signs and symptoms; it is not the same as an actual diagnosis, and neither Doctors Conanan, Schultz, George nor Ahmed found that he had symptoms consistent with pneumonia.  (Conanan Decl. ¶ 4, ECF No. 153-4.)  Plaintiff's cannot create a triable issue of material fact by attempting to interpret his own medical records.

To the extent Plaintiff claims that Dr. Conanan delayed his treatment, and thereby caused him further harm, there is no factual support for such contention.  As stated above, the undisputed evidence demonstrates that Plaintiff received treatment for his rib fractures, and Plaintiff's lay opinion about his disagreement with Defendant Conanan's care does not give demonstrate a genuine issue of material fact.  Dr. Conanan acknowledged Plaintiff's fractured ribs, ordered pain medication, advised modification of activity, and ordered rounds of x-rays.  Compare, e.g., Bond v. Arrowhead Regional Medical Center, EV-CV-11-2049-DDP (PLA), 2015 WL 509823, at *14-16 (C.D. Cal. Feb. 5, 2015) (denying summary judgment because undisputed medical evidence demonstrated that defendant

physician did not request x-rays of inmate plaintiff's chest despite inmate plaintiff's complaints of difficulty breathing, and defendant physician failed to diagnose plaintiff's fractured rib).  The mere fact that Plaintiff ultimately required surgical intervention does not demonstrate that Dr. Conanan was deliberately indifferent or that her actions or omissions led to the result.  (Feinberg Decl. ¶¶ 27, 28.)

Plaintiff's complaints regarding Dr. Conanan's treatment essentially amount to disagreement about the care he received.  However, it is clearly established that disagreements over "matter[s] for medical judgment," such as whether additional testing would be required or the level of care necessary, are insufficient to establish a constitutional violation.  In fact, Plaintiff's refusal to take Tylenol No. 3 with codeine against medical advice demonstrates his disagreement with Dr. Conanan's proposed course of treatment.  Plaintiff testified at his deposition that, "tylenol is no remedy for what I was going through in terms of broken ribs and internal bleeding."  (Pl.'s Dep. at 56:16-22.)  However, it is undisputed that Plaintiff's lay opinion is without foundation as he is not a medical expert.  (Id. at 11-14.)  While a prisoner is "free to refuse specific medications or types of medication, he does not have a right to dictate what medications he will be prescribed."  Peacock v. Horowitz, No. 2:13-cv-2506- TLN AC P, 2016 WL 3940346, at *7 (E.D. Cal. July 21, 2016) (citing Stiltner v. Rhay, 371 F.2d 420, 421 n.3 (9th Cir. 1967)) (allegations that a prisoner feels he is not receiving the "the kind and quality of medical treatment he believes is indicated" do not "justify federal intervention."); see also Medina v. Barenchi, No. 3:16-cv-2423-SJB-KSC, 2016 WL 7325508, at *5 (S.D. Cal. Dec. 16, 2016) (sua sponte dismissing Eighth Amendment claims against prison doctors pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A because "while Plaintiff obviously disagrees with Defendants' assessment of his need for narcotics to treat his pain," dissatisfaction alone is insufficient to support a deliberate indifference claim); Hardwick v. California Dep't of Corr. & Rehab., No. 2:16-cv-0854 TLN DB P, 2018 WL 3244028, at *3 (E.D. Cal. July 3, 2018) ("Plaintiff's allegations fail to show that defendants denied or delayed treatment or that prescribing Sulindac without simultaneously giving him Prilosec was medically unacceptable."); Mattson v. Lopez, No. 1:13-cv-00567-RRB, 2015 WL 222510, at *3 (E.D. Cal. Jan. 14, 2015) (when an inmate complains that a doctor was deliberately indifferent, "it is somewhat incongruous for [the inmate] to complaint that he was denied a particular course of

treatment when at the same time he was refusing medically prescribed treatment.")  Accordingly, Plaintiff cannot demonstrate that Defendant Conanan was  fractured ribs.

Lastly, Plaintiff disputes Defendant Conanan's testimony that she requested Plaintiff to urgently see a pulmonologist.  (ECF No. 122, at 2.)  However, the Court dismissed this allegation because Plaintiff failed to exhaust his administrative remedies which is the law of the case.  United States v. Alexander, 106 F.3d at 876-77.  Accordingly, Plaintiff cannot demonstrate a material issue of disputed fact based on this allegations, and Defendant Conanan's motion for summary judgment should be granted.[15]

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment (ECF No. 122) be denied;

2.    Defendant Conanan's motion for summary judgment (ECF No. 138) be granted; and

3.    The Clerk of Court be directed to enter judgment in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 27, 2021**

UNITED STATES MAGISTRATE JUDGE

---

[15] Because, this Court finds Defendant Conanan is entitled to summary judgment on the merits of the Eighth Amendment claims there is no reason to reach Defendant's argument that she is entitled qualified immunity issue in this case.